L 07-9 RCL

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS**

*Robert S. Szlemko*

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

*Pro Se N/A*

**DEFENDANTS** *State*
*Judge Gordon Webb*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

CASE NUMBER 1:07CV00009

JUDGE: Royce C. Lamberth

DECK TYPE: Civil Rights (non-employm

DATE STAMP: 01/04/2007

JURY ACTION

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP**
FOR PLAIN

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus / 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☐ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☒ YES    ☐ NO

**VIII. RELATED CASE(S) IF ANY**   N.r.    (See instruction)    ☐ YES ☐ NO    If yes, please complete related case form.

**DATE** 1-4-06     **SIGNATURE OF ATTORNEY OF RECORD**    NCD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

# ACTS

OF THE

# GENERAL ASSEMBLY

OF THE

# STATE OF ARKANSAS,

PASSED AT THE SESSION HELD AT THE CAPITOL, IN THE CITY OF
LITTLE ROCK, WHICH BEGUN ON MONDAY, THE FIFTH DAY OF
NOVEMBER, A. D. EIGHTEEN HUNDRED AND SIXTY-SIX, AND
ADJOURNED, ON THE TWENTY-THIRD DAY OF MARCH,
EIGHTEEN HUNDRED AND SIXTY-SEVEN, TO RE-
ASSEMBLE ON THE EIGHTH DAY OF JULY,
OF THE SAME YEAR.

## (BY AUTHORITY.)

GAZETTE OFFICE, LITTLE ROCK:

WOODRUFF & BLOCHER, PUBLIC PRINTERS.

1867.

07 0009

**FILED**

JAN - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# ACTS

### OF THE

# GENERAL ASSEMBLY,

### OF THE

# STATE OF ARKANSAS,

PASSED AT THE SESSION HELD AT THE CAPITOL, IN THE CITY OF
LITTLE ROCK, ARKANSAS, A. D. 1866-7.

## No. 1.

AN ACT to relieve Robert Goodwin, A. Ammons, W. V. Tatum,
et alias, as trustees of El Dorado Female College.

| Section | Section |
|---|---|
| 1. Robert Goodwin and others, appointed trustees to sell lands, &c. | upon such terms as they see proper, &c., &c. |
| 2. Trustees to advertise and sell lands | 3. Conflicting laws repealed, &c. |

WHEREAS, Robert Goodwin, A. Ammons, W. V. Tatum and
others, as agents or trustees of the El Dorado Female College,
Union county, state of Arkansas, having become deeply involved
in debt, in their fiduciary character; and whereas, almost all the
assets of the company of which they acted as trustees have been

3

# ERRATA.

In Section 2, and the succeeding sections, of each of the acts numbered 106,
107 and 108, supply the words "Be it further enacted," after the numbers of sec-
tions.

On page 466, instead of "Sec. 22," read "Sec. 16."

swept away by the war; and as the lot of land on which the college building was erected, is held by them for school purposes, therefore,

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That the said Robert Goodwin, A. Ammons and others, as trustees, be, and they are hereby empowered to sell and convey in fee simple, the lot of land and building erected thereon, known as the El Dorado Female College, in the county of Union, and state of Arkansas.

SEC. 2. *Be it further enacted,* That after due advertisement in the county paper, they shall sell to the highest bidder, at public outcry, before the court house door, in the town of El Dorado, the said lot of land and building thereon, upon such terms as they may think proper; and the money or notes they may receive from such sale, shall be used by them in liquidating their indebtedness as trustees; *Provided,* that any surplus or assets that may remain in their hands after the payment of said debts, be equally, *pro rata,* divided among the stockholders of said institution.

SEC. 3. *Be it further enacted,* That all laws in conflict with this act be repealed; and this act take effect and be in force from and after its passage.

APPROVED, November 28, 1866.

## No. 2.

AN ACT to aid in the execution of the last will and testament of Junius W. Craig, deceased.

| SECTION | SECTION |
|---|---|
| 1. Repeals part of 13th section of general administration law, and authorizes William P. Holliday | and Emma J. Wright, non-residents, to qualify as executor and executrix, &c. |

WHEREAS, Junius W. Craig, by his last will and testament, appointed William P. Holliday, of the city of Cairo, Illinois, and Miss Emma J. Wright, of the city of Memphis, Tennessee, his executor and executrix, and whereas, by the 13th section, chapter 4, Arkansas Digest, letters testamentary cannot be granted to non-residents, therefore,

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That so much of the general administration law, contained in the said 18th section, as excludes said Holliday and said Emma J. Wright, from qualifying as executor and executrix of said will, on account of their non-residence, be, and the same is hereby repealed, so far as respects the estate of Junius W. Craig, deceased.

SEC. 2. That this act shall take effect and be in force from and after its passage.

APPROVED, December 10, 1866.

## No. 3.

AN ACT to provide for the payment of state and county tax assessors, yet unpaid.

| SECTION | SECTION |
|---|---|
| 1. Appropriating sufficient sum to pay State and County Assessors. | 2. Act takes effect and is in force from and after passage. |

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That the sum necessary to pay the state and county assessors in the counties yet unpaid, be, and the same is hereby appropriated.

SEC. 2. *Be it further enacted,* That this act take effect and be in force from and after its passage.

APPROVED, December 10, 1866.

22

ACTS OF ARKANSAS.

SECTION
28. To regulate partition walls, etc.
29. To establish weights and measures.
30. To inspect and measure lumber, etc.
31. To provide for inspection, weighing, etc., of hay, fodder, etc.
32. To provide for and regulate inspection of beef, pork, etc.
33. To regulate inspection of butter and other provisions.
34. To regulate weight, quality, and price of bread, etc.
35. To regulate size of bricks, etc.
36. To provide for taking census.
37. To regulate election of city officers.
38. To provide for appointment of officers not elective.
39. To fix compensation of city officers.
40. To establish police department, and regulate police; to impose fines, forfeitures, etc.
41. To erect workhouse and house of correction, and to regulate same.
42. To create office of port warden, and to regulate and license ferries.
43. To remove obstructions from sidewalks, etc.
44. To prevent and restrain riots, etc.
45. To prevent and remove encroachments upon streets.
46. To control property belonging to city, and to make rules and regulations for maintenance of peace, and government of city, etc.
17. To make all necessary ordinances to carry into effect foregoing powers.
18. Style of ordinances.

SECTION
20. Ordinances shall be published in newspaper.
21. Ordinances, when printed, shall be received in evidence in courts.
22. In absence of mayor, aldermen shall elect presiding officer, pro tempore.
23. Elective officers to be commissioned by governor, etc.
24. City officers shall hold office one year, and until successors are elected and qualified.
25. City council shall decide elections in case of tie, and shall fill vacancies.
26. Mayor to enforce laws of state and city ordinances, within city limits; may remit fines, etc., etc.
27. Mayor may call special sessions of council.
28. Provides for city recorder, treasurer, collector, attorney, engineer, surveyor, and police judge, and duties.
29. Provides how they shall be elected or appointed.
30. Duty of city recorder.
31. Power of police.
32. Duties of collector.
33. Judge of police court, and jurisdiction.
34. Council may prescribe rules and order of proceedings of police court.
35. General election shall be held on first Monday in January, in each year.
36. Qualifications of voters.
37. Council shall appoint judges of election.
38. Elections shall continue one day only.
39. Inhabitants exempted from working on roads.

ACTS OF ARKANSAS.

23

SECTION
40. Police have power to make arrests.
41. Qualification for office of mayor.
42. This act shall not invalidate acts or rights of officers or citizens accrued before passage.
43. This act declared to be a public

SECTION
44. And shall not, vacate offices, etc, until next election.
45. Mayor to promulgate this law.
46. Inconsistent and conflicting laws repealed.
act.

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That all that district of country embraced within the limits of section three, the north fractional half of section two, the south-west quarter of section two, the north-west quarter of the south-east quarter of section two, the north half of section ten, and the north-west fractional quarter, west of the Quapaw line, of section eleven, all south of the Arkansas river, and in township one north, range twelve west, be, and the same is hereby erected into a corporate city forever by the name of the city of Little Rock.

SEC. 2. *Be it further enacted,* That for the preservation of peace and good order, and for the better ruling and governing said city and inhabitants, there shall be a mayor and eight aldermen, who shall constitute a city council, and be known and distinguished by the name of the Mayor and Aldermen of the City of Little Rock, and they and their successors at all times shall be able and capable to sue and be sued, implead and be impleaded, defend and be defended, in all courts of law and equity, and all actions whatsoever; may purchase, receive, and hold property real and personal, within said city, and may sell, lease, or dispose of the same for the benefit of the city; and may purchase, receive, and hold property real and personal, beyond the limits of the city, to be used for the burial of the dead of the city; also for the erection of waterworks to supply the city with water; and for the establishment of a hospital for the reception of persons infected with contagious and other diseases; also for a poor house, work house, or house of correction; and may sell, lease, or dispose of such property for the benefit of the city; they shall have and use one common seal, and may break, change, alter, and make a new seal at pleasure.

SEC. 3. *Be it further enacted,* That the city of Little Rock shall be divided into four wards, the boundaries whereof shall be fixed by the city council, and be by the council changed from time to time, as they shall see fit, having regard to the number of free white male inhabitants, so that each ward shall contain as near as may be the same number of free white male inhabitants.

SEC. 4. *Be it further enacted,* That there shall be a city council to consist of the mayor and eight aldermen, the mayor to be the presiding officer, and to be elected by the qualified voters of the city, and two aldermen to be elected by the qualified voters of each ward.

SEC. 5. *Be it further enacted,* That if any alderman shall, after his election, remove from the ward for which he was chosen, his office shall be thereby vacated.

SEC. 6. *Be it further enacted,* That the city council may appoint such officers, servants and agents as they shall deem necessary in the transaction of their business.

SEC. 7. *Be it further enacted,* That the council shall judge of the qualifications, returns and elections of its own members, and shall determine all contested city elections.

SEC. 8. *Be it further enacted,* That any five members of the council shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and may compel the attendance of absent members in such manner and under such penalties as the council may prescribe.

SEC. 9. *Be it further enacted,* That the city council may determine the rules of its proceedings, punish its members for disorderly behavior, and with the concurrence of two thirds of all the members, may expel a member, but not a second time for the same offence.

SEC. 10. *Be it further enacted,* That the council shall keep a journal of its proceedings, which may be published in one of the city papers, to be selected by the council.

SEC. 11. *Be it further enacted,* That no member of the council shall, during the time for which he was elected, be appointed to any office under the city.

SEC. 12. *Be it further enacted,* That all vacancies that shall occur, by death or resignation of a member, shall be filled by the city council at its first regular meeting thereafter, by election.

SEC. 13. *Be it further enacted,* That there shall be a regular meeting of the city council in each week, the time and place of meeting to be fixed by the council.

SEC. 14. *Be it further enacted,* That upon the passage of all bills imposing taxes, increasing, lessening, or abolishing licenses, and of all bills, borrowing money, the yeas and nays shall be entered on the journal.

SEC. 15. *Be it further enacted,* That a majority of all the members elected shall be necessary to pass a tax bill, bills appropriating for any purpose the sum of five hundred dollars or upwards, and bills in anywise increasing or diminishing the city revenue.

SEC. 16. *Be it further enacted,* That the city council shall have power within the city, by ordinance:

*First.* To levy and collect an annual ad valorem tax for ordinary revenue, of not more than one per centum on all real, personal, and mixed property, within said city; and all taxes upon real estate, shall be a lien on said real estate superior to all other claims whatsoever, from the date of assessment, and also power to provide for the assessment of merchandize quarterly.

*Second.* To have a lien on steamboats or other crafts for wharfage, with power to enforce payment by attachment or otherwise.

*Third.* To borrow money on the credit of the city, and issue bonds for the payment of the same.

*Fourth.* To appropriate money and provide for the payment of the debt and expenses of the city.

*Fifth.* To make regulations to prevent the introduction of contagious diseases into the city, to make quarantine laws for that purpose, and enforce the same; and for that purpose, as well as also for the purpose of promoting the general health of the city, the jurisdiction of the city council shall extend four miles in every direction.

32    ACTS OF ARKANSAS.

diligently and faithfully discharge the duties of their offices to the best of their skill and ability, which oath shall be endorsed on their commissions, and shall be administered by an officer of said state, authorized to administer oaths.

SEC. 24. *Be it further enacted,* That all officers for the city shall hold their offices for the term of one year, and until their successors are elected and qualified.

SEC. 25. *Be it further enacted,* That in all cases of a tie vote, the city council shall decide the same, and whenever any vacancy shall occur in a city office, the city council shall fill the same.

SEC. 26. *Be it further enacted,* That it shall be the duty of the mayor to take care that the laws of the state and the ordinances of the city are duly enforced, respected and observed within the city. He may, with the consent of the council, remit fines, forfeitures, and penalties, accruing from, or imposed for, the violation of any ordinance of the city; he shall, from time to time, lay before the council information relative to the state of the city, and shall recommend to their consideration such measures as he shall deem expedient for the advantage of the city, and in council shall only vote in case of a tie, or upon a call for the ayes and noes.

SEC. 27. *Be it further enacted,* That the mayor may call special sessions of the council, by causing due notice to be given, and when the council shall be assembled, in such special session, the mayor shall state the cause for which they have been convened.

SEC. 28. *Be it further enacted,* That there shall be a city recorder, treasurer, collector of revenue, attorney, engineer, surveyor, and a *judge of the police court,* who in addition to the duties prescribed by this act, shall perform such other duties as may be prescribed by ordinance; there shall also be such other officers, servants and agents of the corporation, as may be provided by ordinance.

SEC. 29. *Be it further enacted,* That the city recorder, treasurer, collector of revenue and judge of the police court, shall be elected by the qualified voters of the city; and the city attorney, engineer and surveyor, shall be appointed by the city council; they shall hold their office for the term of one year, and until

ACTS OF ARKANSAS.    33

their successors are duly qualified, and perform such duties as may be prescribed by the city council.

SEC. 30. *Be it further enacted,* That it shall be the duty of the city recorder to keep a record of all the official acts of the mayor and city council, and when necessary, to attest them; he shall keep and preserve in his office the common seal of the city, and all records, public papers and documents of the city not properly belonging to any other office; the city treasurer shall receive and keep the money of the city, and pay out the same on warrants drawn by the mayor, and shall give bond in such sums as the council may require, and shall receive such compensation as may be fixed by the council.

SEC. 31. *Be it further enacted,* That any member of the police department of the city of Little Rock, shall, within the city limits, in matters of criminal nature, arising under any law of the state, possess the same powers, perform the same duties, and receive the same compensation as the constable of Big Rock township, and shall execute and return all process issued by the mayor, city council or judge of the police court, under this act or any ordinance of the city.

SEC. 32. *Be it further enacted,* That the collector of revenue shall collect the taxes, licenses, wharfage, and all other revenue of the city, and pay the same over to the treasurer, taking his receipt therefor; he shall attend all meetings of the city council; he shall give bond in such amount as may be fixed by the council, and may appoint one or more deputies; and shall perform such other duties as may be prescribed by the city council.

SEC. 33. *Be it further enacted,* That there shall be a judge of the police court, who shall be elected at the same time; and hold his office for the same term as the mayor and aldermen, and other elective officers, and until his successor is duly elected and qualified; he may be removed from office in the same manner as the mayor; he shall have jurisdiction in all actions brought for the recovery of any fine or penalty, under any ordinance, by law, or police regulations of the city council, and shall have power to fine, imprison or sentence to labor on the streets or public

5

## 38

ACTS OF ARKANSAS.

assessed for any levee district therein, and such fund shall be first applied to the necessary repair of levees, in said districts, and such county fund shall be applied under direction of the county court, to the payment of county indebtedness on the best terms that may be offered in open court.

SEC. 4. *Be it further enacted,* That that portion of Desha county included in the levee circle, in township seven, (7) and eight (8) south, range one and two east, is hereby made a levee district, to be called the *Laconia Levee District,* which shall be governed by the levee laws now in force in said county ; *Provided,* that the county court shall appoint the necessary officers for said district until the next general election; *And provided further,* that a uniform valuation shall be placed upon all improved lands, and also upon all unimproved lands in said district, and provided also that the necessary draining machines, engines and culverts for the thorough protection of said district, may be first provided, and the necessary expenses incident thereto borne by the district inspector.

SEC. 5. *Be it further enacted,* That levee district number one shall remain as heretofore, except that portion included in the Laconia Levee District, and the county court may appoint the necessary officers until the next general election. Nothing herein shall be construed to exempt the Laconia Levee District from its *pro rata* liability for indebtedness heretofore incurred. All laws in conflict with this act shall be and are hereby repealed, and this act shall take effect and be in force from and after its passage.

APPROVED, December 17th, 1866.

---

ACTS OF ARKANSAS.    39

## No. 8.

AN ACT to amend the charter of the city of Pine Bluff.

| SECTION. | SECTION. |
|---|---|
| 1. Provides for election of recorder. | 6. Mayor shall be keeper of the seal etc. |
| 2. Qualifications of recorder. | 7. Constable to make settlements. |
| 3. Recorder shall be conservator of the peace, and have jurisdiction of a justice of the peace. | 8. Officers shall take the constitutional oath. |
| 4. Recorder shall have power to take depositions, etc. | 9. Additional powers conferred on Mayor. |
| 5. Mayor shall be chief executive officer of city. | 10. Compensation of Mayor. |
| | 11. Conflicting laws repealed. |

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That in addition to the executive officers provided for by the act entitled "an act to incorporate the city of Pine Bluff, in Jefferson county, Arkansas," approved January 1st, 1861, there shall be elected by the qualified voters of said city, on the first Monday of January, in each year, one recorder, who shall hold his office for the term of one year and until his successor shall be elected and qualified.

SEC. 2. *Be it further enacted,* That the recorder to be elected under the preceding section of this act shall possess the same qualifications, and be commissioned in like manner, as now prescribed by said charter for the mayor of said city, and vacancies in the office of recorder shall be filled in the same manner as other executive officers of said city.

SEC. 3. *Be it further enacted,* That the recorder of said city shall be a conservator of the peace therein, and shall have and exercise in said city, the same jurisdiction, powers and duties as a justice of the peace in all civil and criminal cases, by virtue of the constitution and laws of this state; and in hearing, trying and determining all civil and criminal causes, pending before him, said recorder shall be governed by the same rules of practice as the statutes of this state have prescribed, or may hereafter prescribe for justices of the peace, in all proceedings of a similar

## No. 31.

AN ACT to provide for the support of wounded and disabled soldiers, and for the support of indigent widows and children of deceased soldiers, and the relief of indigent families of this state, and to furnish artificial limbs for maimed soldiers, and other purposes named.

SECTION.

1. Ten per cent. of revenue to be reserved as a fund for relief of destitute wounded or disabled soldiers.
2. Auditor to issue warrants for am't due respective counties.
3. Assessors to make return, of soldiers, etc., entitled to benefits of act.
4. County courts to examine and decide parties claiming benefits.
5. Said lists to be filed in clerk's office.
6. County courts to cause moneys to be applied to relief.
7. County courts to return list to

SECTION.

clerk's office, and certified copy to be filed with auditor.
8. County courts may levy a special tax of 50 per cent. of state tax.
9. Not more than $35,000 to be paid for purposes of act.
10. Auditor to ascertain number of soldiers requiring artificial limbs, and to contract for requisite number.
11. Assessors required to furnish audi, tor information required in section 10.
12. Conflicting laws repealed.

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That ten per cent. of the revenue of this state be reserved by the state treasurer annually, to constitute a fund for the relief of destitute, wounded or disabled soldiers, not otherwise provided for by the United States enactments; and for the support of indigent widows and children of deceased soldiers, not otherwise provided for by the United States, to be distributed annually to the several counties in this state in the manner hereinafter provided; *Provided,* That ten thousand dollars, arising out of the revenue for the present fiscal year, be retained in the hands of the state treasurer, to be applied to the purchase of artificial limbs, as hereinafter provided; *And provided further,* That the balance of the said fund, arising from said revenue for

the present fiscal year, may, in the discretion of the county courts of the respective counties in this state, be applied for the support of the beneficiaries of their respective counties, as hereinafter provided.

SEC. 2. *Be it further enacted,* That within *thirty days* after the close of the fiscal year annually, or as soon thereafter as application shall be made to him for that purpose, the auditor of public accounts of this state, shall issue his warrant on the state treasurer in favor of the county treasurer of the respective counties in this state, for the amount due to said counties; *Provided,* That the county treasurer of the respective counties, shall give bond and security, in such sum as shall be required by the respective county courts, conditioned, payable and approved as other official bonds in this state.

SEC. 3. *Be it further enacted,* That it shall be the duty of the assessor of taxes of the respective counties in this state, to make and return, under oath, with their respective assessment rolls, annually, to the respective county courts, a list of the names and number, stating age, company and regiment, how and when wounded or disabled, of soldiers not now in the service of the United States, who have not been provided for by pension, bounty or otherwise, who enlisted, as such soldiers, in this state, and residents of this state, at the time of the passage of this act who have been permanently disabled in the late war, and are destitute of the means of support; and likewise the number of destitute widows of deceased soldiers; and the number of indigent children of soldiers who were disabled or killed in battle, or died while in service; if killed or died, stating name, age, rank, company, regiment or battalion, when and where wounded, disabled, killed or died, while in service in the late war, not already provided for by pension, bounty or otherwise by the United States, together with the names of surviving parents or guardians; *Provided,* That the benefits of this act, shall extend to indigent widows and children of persons who were not enlisted as soldiers

154        ACTS OF ARKANSAS.

## No. 61.

AN ACT to constitute John Gordon Wallace, the heir at law, of Benjamin F. Wallace, of Phillips county.

SECTION.
1. John Gordon Wallace made heir of Benjamin F. Wallace.
2. Benjamin F. Wallace to control the said John Gordon Wallace as his own child.
3. John Gordon Wallace to inherit estate of Benjamin F., etc.
4. When act to take effect.

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That John Gordon Wallace, the infant orphan child of Lemuel L. Wallace, late of Monroe county, in this state, is hereby constituted the heir at law of Benjamin F. Wallace, of Phillips county.

SEC. 2. That the said Benjamin F. Wallace shall have and exercise the same control over the said John Wallace, as if he was his own child.

SEC. 3. That the said John Gordon Wallace shall have and enjoy, by descent, gift or devise, all the rights in the estate of the said Benjamin F. Wallace, as if he had been the natural born child of the said Benjamin F.

SEC. 4. That this act take effect and be force from and after its passage.

APPROVED, February 21st, 1867.

---

ACTS OF ARKANSAS.        155

## No. 62.

AN ACT to increase the salaries of the Judges of the Supreme Court of this state.

SECTION.
1. Fixes salary of Supreme Judges.
2. When act takes effect.

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That the salaries of the supreme judges of this state shall be at the rate of four thousand dollars per annum.

SEC. 2. *And be it further enacted,* That this act shall take effect on the first of January, A. D., 1867.

BRADLEY BUNCH, *Speaker of the House of Representatives.*
ANDREW HUNTER, *President pro. tem. of the Senate.*

This bill having been returned by the governor, with his objections thereto, and after reconsideration, having passed both houses by the constitutional majority, it has become a law this 21st day of February, one thousand eight hundred and sixty-seven.

BRADLEY BUNCH, *Speaker of the House of Representatives.*
ANDREW HUNTER, *President pro. tem. of the Senate.*

of Arkansas, That the common school commissioner of the county of Hempstead, be authorized to compromise, settle, and adjust, with William P. Hart, as administrator, *de bonis non*, of the estate of Daniel E. Williams, deceased, a certain suit now depending on the chancery side of the circuit court of said county, against said Hart, as administrator, and others, in favor of said commissioner, and to accept from said Hart, notes and bonds held by him as such administrator, in discharge of the demand upon which said suit is founded, exercising a reasonable discretion in regard thereto; and when such compromise and settlement is made, the same shall be reported to the county court of said county, and should any deficiency occur, by reason of said compromise and settlement, said commissioner shall be entitled to credit therefor, and shall not thereafter be held liable on his official bond therefor, except for fraud.

SEC. 2. That said William P. Hart, as administrator *de bonis non*, is hereby vested with power and authority to compromise and settle such demand with said common school commissioner, and shall be entitled, in his settlement with said estate, to credit for the amount of notes, bonds, bills, or other assets, he may apply to the settlement thereof, notwithstanding said sum upon its face should exceed the amount of said demand, and he shall not be held responsible to any other creditor, or to any heir or distributee, on account of said compromise and settlement, except for fraud therein.

SEC. 3. That this act shall take effect and be in force from and after its passage.

APPROVED, March 20th, 1867.

## No. 187.

AN ACT to declare Felix T. Coker and James W. Coker, of Marion county, of lawful age.

| SECTION | SECTION |
|---|---|
| 1. Declares minors named, as of full age, etc. | 2. Act in force from passage. |

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That Felix T. Coker and James W. Coker, of Marion county, in this state, minors of the ages of eighteen and twenty years, respectively, be, and they are hereby declared to be of full and lawful age, and capable to contract, and be contracted with, and to do and perform all things necessary in the management of their estates and affairs, which persons over the age of twenty-one may do according to law.

SEC. 2. *Be it further enacted,* That this act shall take effect from and after its passage.

APPROVED, March 20th, 1867.

## No. 188.

AN ACT to fix the pay of Judges of the Probate and County Courts, and Associate Justices of the County Courts of the several counties herein named.

| SECTION | SECTION |
|---|---|
| 1. Fixes salaries of judges of county and probate courts. | 3. County courts of certain counties authorized to fix pay of county and probate judges, and associate justices. |
| 2. Compensation of associate justices of the county courts. | |

## No. 189.

AN ACT to incorporate Camden High School.

| SECTION | SECTION |
|---|---|
| 1. Style of corporation. | 6. Vacancies in board of trustees, how filled. |
| 2. Names of trustees. | 7. Salaries of officers. |
| 3. Powers of trustee. | 8. Misnomer shall not defeat gifts, etc. |
| 4. President to be elected, powers of trustees. | 9. Act to be deemed a public one. |
| 5. Property exempted from taxation. | 10. Act in force from passage. |

SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas,* That an institution of learning, be, and the same is hereby established in the city of Camden, in the county of Ouachita, to be denominated the Camden High School.

SEC. 2. *Be it further enacted,* That the following persons be, and they are hereby appointed trustees of said high school, to-wit: Jesse M. Pace, M. D., Solomon Block, John Seay, M. D., Benjamin F. Morgan [and] Col. John L. Logan, a majority of whom shall constitute a quorum for the transaction of business.

SEC. 3. *Be it further enacted,* That the trustees aforesaid be, and they are hereby constituted a body politic and corporate, in deed and in law, by the name of the President and Trustees of Camden High School, and in that name they and their successors shall and may have perpetual succession, and be able and capable in law, to have, receive, and enjoy to them and their successors, lands, tenements, and hereditaments of any kind, in fee or for life, or for years, and personal property of any kind whatsoever, which may be given, granted, sold or conveyed, or bequeathed to them for the purpose of promoting the interest of said school.

SEC. 4. *Be it further enacted,* That the trustees aforesaid, a majority being present, may elect a president, and have a common seal for themselves and successors in office, and by their aforesaid name they and their successors shall be allowed to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended in all courts of law and equity in this state,

and to grant, bargain and sell, or assign any lands, tenements, goods or chattels, that do or may hereafter belong to said school, to construct all necessary buildings, to manage the finances, and to act and do all things necessary for the benefit of said school, in as ample a manner as any person or body politic or corporate, can or may do by law.

SEC. 5. *Be it further enacted,* That all property of whatever kind, lands, buildings, apparatus, and other furniture, and goods or chattels, that do or may hereafter belong to said high school, shall be forever exempt from taxation: *Provided,* that the value of said property shall not exceed twenty thousand dollars.

SEC. 6. *Be it further enacted,* That whenever a vacancy shall happen in said board of trustees, either by death, resignation, or otherwise, they shall have power to fill the same, a majority being present, and shall also have the power to appoint all necessary officers and fill all vacancies which may happen in said high school.

SEC. 7. *Be it further enacted,* That the trustees aforesaid, shall have the power of fixing the salaries of all officers connected with said school, and of removing any of them for neglect or misconduct in office, a majority of the whole number concurring in said removal.

SEC. 8. *Be it further enacted,* That no misnomer of said school shall defeat or annul any gift, grant, or devise, or bequest to the same.

SEC. 9. *Be it further enacted,* That this act shall be deemed a public one, and judicially taken notice of as such, without special pleading.

SEC. 10. *Be it further enacted,* That this act shall take effect and be in force from and after its passage.

APPROVED, March 20th, 1867.

# ACTS,

## RESOLUTIONS AND MEMORIALS

*Wm. F. Fulmer*

### OF THE

# GENERAL ASSEMBLY

### OF THE

## STATE OF ARKANSAS,

*Passed at the Session held at the Capitol, in the City of Little Rock, Ark., commencing on the 8th of January, 1877, and ending on the 8th of March, 1877.*

### BY AUTHORITY.

Little Rock:
PRINTED AT THE GAZETTE BOOK AND JOB PRINTING HOUSE.
1877.

# PUBLIC ACTS

OF THE

## GENERAL ASSEMBLY, STATE OF ARKANSAS.

*Passed at the Session held at the Capitol, in the City of Little Rock, 1877.*

---

### No. I.

AN ACT to change the time of holding the Circuit Court of Independence County.

SECTION
1   Circuit Court of Independence County, when held.
2   Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1.  That the Circuit Court of the County of Independence shall commence and be holden on the second Monday of January and July of each year.

SEC. 2.  That this act take effect and be in force from and after its passage.

Approved January 29th, 1877.

---

### No. II.

AN ACT to be entitled an act to amend section one of an act, entitled "An act to Amend Section 3101, of Gantt's Digest, and for other purposes." Approved March 5th, 1875.

SECTION
1   *Habeas Corpus,* writ of, when and by whom issued.
2   Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1.  That section one, of an act entitled an act to amend section 3101, of Gantt's Digest, and for other purposes,

[ 2 ]

approved March 5th, 1875, be amended so as to read as follows:

The writ of *habeas corpus* shall be issued upon proper applications, by the following officers: By a Judge of the Supreme Court, or of any Chancery Court during the sitting of their respective Courts or in vacation. The power of the Supreme, Circuit or Chancery Courts to issue writs of *habeas corpus* shall be co-extensive with the State. The County Judge shall have power, in the absence of the Circuit Judge from the County, to issue and hear writs of *habeas corpus* on application of parties confined in the County Jail of his County, charged with an offence committed in said county; *Provided,* That no Judge of any County Court shall have power to issue or hear any writ of *habeas corpus* in any case in which an indictment has been found by a Grand Jury.

Sec. 2. This act take effect and be in force from and after its passage.

Approved January 31st, 1877.

## No. III.

AN ACT to continue in force the Charter of the Iron Mountain and Helena Railroad Company, and to extend the time of the completion of the Railroad of said Company.

SECTION
1. Charter of Iron Mountain and Helena Railroad Company continued in force.
2. Time extended for completion of road.
3. Act not to be construed as exempting, or reviving any right of exemption, from taxation.
4. Repeal of conflicting laws. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That an act entitled an act to incorporate the Iron Mountain and Helena Railroad Company, approved December 31st, A. D. 1860, is hereby declared to be and to continue in full force and effect, subject only to the provisions of section (8) eight, of article (17) seventeen, of the Constitution of the State of Arkansas.

Sec. 2. That the time for the completion of the Railroad of said Iron Mountain and Helena Railroad Company is hereby extended to the thirty-first day of January, A. D. 1882.

[ 3 ]

Sec. 3. That nothing in this act shall be so construed as exempting any of the property, real or personal, from any taxation, general or special, or of reviving any right of exemption that may have been heretofore granted to said Company.

Sec. 4. That all laws in conflict with this act are hereby repealed, and this act shall be in force and take effect from and after its passage.

Approved January 31st, 1877.

## No. IV.

AN ACT to change the time of holding the Probate Court of Little River County.

SECTION
1 Probate Court of Little River County, when held.
2 Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That hereafter the Probate Court of the County of Little River be begun and held on the third Mondays in January, April, July and October.

Sec. 2. That this act take effect and be in force from and after its passage.

Approved February 2d, 1877.

## No. V.

A BILL to be entitled "An Act to authorize the County Court of the County of Miller to hold a Special Term."

SECTION
1 County Court of Miller County authorized to hold a special term.
2 Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the County Court of Miller County be, and it is authorized to hold a special term of the County Court commencing on the nineteenth day of February, 1877, for the

[ 4 ]

transaction of general and of special matters in regard to said County, the same as at any regular term, and any and all acts done and ordered by said Court at said special term, shall be as binding and valid as if had and done at a regular term.

SEC. 2. *Be it further enacted*, That this act take effect and be in force from and after its passage.

Approved February 5th, 1877.

### No. VI.

AN ACT to make an appropriation to pay the Mileage, Per Diem and Contingent Expenses of the General Assembly.

SECTION
1 $40,000, appropriation to pay mileage, per diem and contingent expenses of General Assembly.
2 Conflicting laws repealed. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That there be and is hereby appropriated out of any funds in the Treasury and not otherwise appropriated, the sum of forty thousand dollars, to pay the mileage, per diem and Contingent Expenses of the General Assembly.

SEC. 2. That all laws and parts of laws in conflict with this act be and are hereby repealed, and this act to take effect from and after its passage.

Approved February 15th, 1877.

### No. VII.

AN ACT to be entitled, an act for Creditors of the Estates of Deceased Persons, to Sell Real Estate to pay debts of said persons, in certain cases.

SECTION
1 Creditor may petition Probate Court for order of sale of lands of Estate, to pay his claim.
2 Preliminary demand and proceeding by Creditor. If Personal Representative refuse to the petition, then any creditor may apply for order of sale.

[ 5 ]

3 Probate Court may order sale, provided there be not sufficient personal assets.
4 Probate Court may compel Administrator to comply with order.
5 Creditor must give notice of his petition. Recitals necessary therein.
6 Conflicting laws repealed. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Any creditor of the estate of a deceased person who shall have a claim against said estate duly probated may present his or her petition to the Probate Court having jurisdiction of the estate for an order to sell said lands or a sufficient amount thereof to pay the demands against said intestate's estate upon the conditions hereinafter stated.

SEC. 2. Said creditor shall demand in writing of the personal representatives of said deceased sixty days before the next term of the Probate Court to present his petition in the manner now prescribed by law, or that may hereafter be prescribed, praying for an order to sell the lands belonging to his intestate or a sufficient amount thereof to pay the demands probated against said estate; and if said personal representatives shall fail or refuse to file his petition with the Clerk of the Probate Court and give notice in the manner prescribed by law within twenty days after said demand, then, in that event any creditor may apply by petition, for an order to sell the lands of said deceased or a sufficient amount to pay debts probated against said deceased's estate, setting forth in said petition the fact of demand and failure of said representatives to comply therewith.

SEC. 3. The Probate Court, if the facts will warrant, shall make an order in compliance with said petition and the law of Administrations, ordering the Administrator of the estate, against which said petition is presented, to sell the lands in the order described in the manner provided by law and pay the debts of his intestate out of the proceeds; *Provided*, no such order shall be made if there is sufficient personal assets in the Administrator's hands to pay debts with.

SEC. 4. The Probate Court shall have power to compel the Administrator to comply with the order made as herein provided by attachment or mandamus.

[ 6 ]

SEC. 5. Any creditor that shall present his or her petition under the provisions of this act to the Probate Court for an order to sell lands of a deceased person to pay debts, shall give notice as now prescribed by law for an Administrator, give and recite therein the fact of the failure of the personal representative of said estate to apply for an order to sell, after being a legal demand made on him to do so.

SEC. 6. All laws in conflict with this act be and the same are hereby repealed, and that this act take effect from and after its passage.

Approved February 15th, 1877.

## No. VIII.

AN ACT to amend section sixteen hundred and ninety-nine of Gantt's Digest.

SECTION
1 Criminal procedure. Defendant may be committed or bailed by Magistrates, except in certain cases.
2 Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That section sixteen hundred and ninety-nine of Gantt's Digest be amended so as to read as follows: During the periods of adjournment, the defendant shall be committed to jail, or to the custody of a peace officer; but the defendant may give bail, or the magistrate may fix a sum equivalent to bail, upon which being deposited with the peace officer in attendance, unless he be a policeman, as surety for the defendant's appearance at the time or times appointed, he may be released from custody during the periods of the adjournment of the examination; Provided, That magistrates shall have no power to admit to bail in such cases, where the charge is for a capital offense, murder or manslaughter.

SEC. 2. That this act take effect and be in force from and after its passage.

Approved February 16th, 1877.

[ 7 ]

## No. IX.

AN ACT to repeal section (11) eleven of an act entitled "An Act to provide for the Locating and Changing of County Seats" Approved March 2, 1875.

SECTION
1 County Seats. Part of Act for locating, repealed. Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That section (11) eleven of an act entitled "An Act to provide for the locating and changing of County seats" approved March 2, 1875, be and the same is hereby [repealed], and that this act shall take effect and be in force from and after its passage.

Approved February 20th, 1877.

## No. X.

AN ACT to Legalize the Levying of Taxes in the Incorporated Town of Searcy, for the year 1876.

SECTION
1 Taxes levied by town of Searcy legalized.
2 Circuit Clerk of White County, to extend same on Tax-Book.
3 Conflicting Laws Repealed. Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That the levying of taxes by the town council of the incorporated town of Searcy for the year 1876, made after the time prescribed by law, be and the same is hereby legalized and made as binding, as though the same had been done at the time required by law.

SEC. 2. That it shall be the duty of the Circuit Clerk of White County, immediately upon the passage of this act, to extend said taxes so levied on the tax-books of said County, to be collected as required by law.

SEC. 3. That all laws and parts of laws in conflict with this act be and the same are hereby repealed, and this act take effect and be in force from and after its passage.

Approved February 20th, 1877.

[ 38 ]

SEC. 4. That all unexpended balances remaining in the Treasury on the date of the passage of this act of the sums appropriated by act of December 6th, 1875, shall be and are hereby covered into the Treasury, and all acts and parts of acts in conflict with this act be and are hereby repealed, and this act to take effect from and after its passage.

This act shall not be construed to effect the payment of claims already duly approved in accordance with law, and payable out of such appropriation; or of claims upon the balance remaining on hand out of the appropriation to provide for a proper representation of the State at the Centennial Exhibition, which may be approved by the proper authorities who contracted the obligations, and shall thereafter be countersigned by the Governor of the State.

Approved March 7th, 1877.

## No. XXXIX.

AN ACT to Appropriate Money to Pay for Work for Additional Buildings and Walls of Penitentiary.

SECTION
1 $80,000 appropriated to supply deficiency for work on contract for erecting buildings and walls of Penitentiary.
2 All sums due on the contract to be paid in bonds of State. Rate of value.
3 Certificates and warrants for same to specify payment to be in Bonds.
4 Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That the sum of thirty-two thousand dollars be, and the same is hereby appropriated out of the Treasury for deficiency to meet payment for work on contract of Zeb Ward for erecting additional buildings and walls at the Penitentiary.

SEC. 2. That said sum and all sums that are now or shall become due on said contract be paid in the bonds of the State, issued under an act entitled "An act to provide means for paying the expenses of the State Government, and to retire outstanding Auditor's and Treasurer's certificates," Approved December 23d, 1874, at the rate of eighty-five cents on the dollar, of the nominal value of said bonds.

[ 39 ]

SEC. 3. That for said sums the Auditor is directed to draw his warrants on the Treasurer in favor of said Ward on presentation of the certificates of the Board of Commissioners of the Penitentiary, showing that said sums are due as aforesaid, which warrants shall specify that said sums are payable in the bonds aforesaid.

SEC. 4. That this act be in force from and after its passage.

Approved March 8th, 1877.

## No. XL.

AN ACT to Authorize and Direct the Commissioner of State Lands to Sell the Property known as the "Arkansas Institute for the Blind," situated in the City of Arkadelphia, Clark County, Arkansas.

SECTION
1 Commissioner of State Lands to advertise and sell certain property of State in Arkadelphia. Terms. Appraisement.
2 Deed for same. Lien reserved therein.
3 Sale to be within ninety days from the passage of this act.
4 Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That the Commissioner of State Lands be authorized and directed to advertise for thirty days in the Little Rock Gazette and the Arkadelphia Standard, that he will sell to the highest bidder, at public vendue, in the city of Arkadelphia, Clark County, Arkansas, at the Court House door, the property known as the "Arkansas Institute for the Blind," such sale to be for one-third of the purchase money, to be paid in cash, one-third in twelve months, and one-third in two years thereafter, taking notes, with approved security, for the deferred payments, reserving a lien upon said property for said deferred payments; Provided, That the property shall be appraised by three disinterested citizens, and shall not sell for less than two-thirds of its appraised value.

SEC. 2. Be it further enacted, That after said sale, said Commissioner will execute a deed for and on behalf of the State of Arkansas to the purchaser or purchasers thereof, conveying all the right, title, interest, or claim in and to said lots, blocks,

[ 62 ]

## No. LIX.

AN ACT to pay the Costs of Inquisitions on Convicts in the Penitentiary.

SECTION
1 Coroners' Inquests on Convicts in Penitentiary, how paid for by the State Coroner to pay Jurors, etc. No Inquest held, unless recommended by the Physician.
2 Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That whenever an inquest, as required by law, is held on the body of any convict in the Penitentiary, the Coroner, or officer holding such inquest, shall present an itemized bill of the fees and costs of the inquisition to the Auditor, and if said bill be found just, the Auditor shall draw his warrant on the Treasurer for the amount, in favor of the Coroner; and it shall be the duty or the Coroner to pay over to the jurors, and other parties, the fees and costs belonging to them; *Provided,* No inquest shall be held on the body of any convict, unless it be recommended by the Physician of the Penitentiary.

SEC. 2. *Be it further enacted.* That this act take effect and be in force from and after its passage.

Approved March 9th, 1877.

## No. LX.

AN ACT requiring the Attorney General of the State of Arkansas, to record one opinion, which he may be called upon to give on any particular point.

SECTION
1 Opinions of Attorney General to be Recorded.
2 Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the Attorney General of this State is required to keep a well-bound book, in which he shall record one opinion on each particular point as given by himself, in all cases, where he is now, or may hereafter be required to give his opinion; which opinions shall be properly indexed by him and turned over to his successor in office, who shall also comply strictly with the requirements of this law.

SEC. 2. That this act take effect and be in force from and and after its passage.

Approved March 9th, 1877.

[ 63 ]

## No. LXI.

AN ACT fixing the Time of Holding the Courts of Probate, in Lawrence County.

SECTION
1 Probate Courts in Lawrence County, when held.
2 Conflicting laws repealed. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That hereafter the Courts of Probate in Lawrence County shall begin and be held on the first Mondays in the months of February, May, August and November of each year.

SEC. 2. That all laws and parts of laws in conflict with this act are hereby repealed, and this act shall be in force from and after its passage.

Approved March 9th, 1877.

## No. LXII.

AN ACT authorizing the County Court of Pulaski County to Equalize and Amend the Assessment of Real Estate made in 1876.

SECTION
1 Pulaski County Court may amend assessment of real estate for 1876. Powers of the Court. Notice.
2 Conflicting acts repealed. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the County Court of the County of Pulaski is hereby authorized to equalize and amend the assessment of real estate in said County for the year of 1876. The Court may insert or add to said assessment any property omitted by the Assessor. May raise or lower the valuation of any property as may seem to it just; *Provided,* That in case any valuation is to be raised, the owner shall have notice that he may appear and contest the same.

SEC. 2. *Be it further enacted,* That all laws in conflict with this are hereby repealed, and that this act be in force from and after its passage.

Approved March 9th, 1877.

[ 70 ]

Sec. 2. This act shall take effect and be in full force from and after its passage.

Approved March 10th, 1877.

---

## No. LXXVI.

AN ACT to suppress the gaming device known as "Keno," etc.

SECTION
1  "Keno," unlawful to be set up or exhibited. Penalty.
2  Prosecuting Attorney, duty of in causing arrests, etc.
3  Justice of the Peace, duty of to cause arrest, etc.
4  Justice of the Peace refusing or failing to cause arrests, etc., to be removed from office.
5  Prosecuting Attorney, refusing or failing to cause arrests, etc., to be fined.
6  Act to be given in charge to Grand Juries. Secretary of State to send certified copies of Law. Prosecuting Attorneys.
7  No License to bar prosecution under this Act, or be any justification for neglect by Justice or Prosecuting Attorney.
8  Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

SECTION 1. That if any person or persons shall set up or exhibit, or cause to be set up or exhibited, or aid or assist in setting up or exhibiting in any county, city or town in the State, any gaming device commonly known and designated as "Keno," or any device similar thereto, by any other name or without a name, each person so setting up or exhibiting such device, or aiding or assisting in exhibiting or setting up such device, shall be guilty of a misdemeanor, and on indictment, and conviction before the Circuit Court, or on conviction before a Justice of the Peace, shall be fined in any sum not less than two hundred dollars, for the benefit of the common school fund.

SEC. 2. Be it further enacted: That it shall be the duty of each Prosecuting Attorney in this State, who knows or is informed of any person, or persons, exhibiting or setting up, or aiding or assisting in setting up any device described in the first section of this act in his circuit, to take immediate steps to have such person or persons immediately arrested for trial, and such Prosecuting Attorney shall have such person or persons arrested as above provided for each separate offense done or committed on every separate day.

[ 71 ]

SEC. 3. Be it further enacted. It shall be the duty of every Justice of the Peace, knowing or being informed of any violation of the first section of this act, in his township, for which the parties have not been arrested or tried under the provisions of this act, to cause the arrest and trial of the person or persons, so offending for each separate offense done or committed against the provisions of this act.

SEC. 4. Be it further enacted. That if any Justice of the Peace who knows or is informed of any violation of Section 1 of this act, in his township, shall refuse or neglect to cause the arrest and trial of the person or persons so violating the same, within five days next after he is informed of the same, he shall be guilty of a misfeasance in office, and on indictment and conviction therefor, he shall be by said Circuit Court removed from office.

SEC. 5. Be it further enacted: That if any Prosecuting Attorney who knows, or is informed, of any violation of this act, shall refuse or neglect to cause the arrest and trial of such person so offending, within five days next after he knows or is informed of the same, he shall on indictment and conviction, be fined in any sum not less than five hundred dollars.

SEC. 6. Be it further enacted: That this act shall be given specially in charge to their respective grand juries, by the several Circuit Judges of this State; and within ten days next after the approval of this act, the Secretary of the State shall send a certified copy of the same to each Prosecuting Attorney in the State.

SEC. 7. Be it further enacted: That no license granted by any city or town shall be any bar to any prosecution or conviction under the provisions of this act, or any excuse, protection, or justification, for any Justice of the Peace or Prosecuting Attorney failing to carry out the same.

SEC. 8. Be it further enacted: That this act be in force and take effect from and after its passage.

Approved March 10th, 1877.

# PUBLIC AND PRIVATE

# ACTS

AND

## Joint and Concurrent Resolutions and Memorials of the General Assembly

OF THE

# STATE OF ARKANSAS

Passed at the session held at the Capitol, in the City of Little Rock, Ark., commencing on the 9th day of January, 1905, and ending on the 4th day of May, 1905.

BY AUTHORITY

UNIVERSITY OF ARKANSAS
LIBRARY

1905
ARKANSAS DEMOCRAT CO.
LITTLE ROCK

SECTION 7. That all laws and parts of laws in conflict herewith are hereby repealed, and this Act take effect and be in force from and after its passage.

Approved January 25, 1905.

## ACT 3.

AN ACT to amend section 3741 of Kirby's Digest of the Statutes of Arkansas.

SECTION

1. Amend section 3741 of Kirby's Digest, relating to officers of the Senate.
2. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That section 3741 of Kirby's Digest of the Statutes of Arkansas be amended to read as follows:

The Senate may elect a secretary who shall receive the sum of six dollars per day, and three assistant secretaries and one journal clerk who shall each receive the sum of five dollars per day, and one chaplain who shall receive the sum of four dollars per day, and one sergeant-at-arms who shall receive the sum of four dollars per day, and one assistant sergeant-at-arms who shall receive the sum of three dollars per day, and one janitor who shall receive the sum of three dollars per day, and one assistant janitor who shall receive the sum of three dollars per day, and three pages who shall each receive the sum of two dollars and fifty cents per day. *Provided*, that the

president may appoint an assistant sergeant-at-arms in case the sergeant-at-arms shall be absent on account of sickness or official duties.

SECTION 2. That this Act take effect and be in full force from and after its passage.

Approved January 25, 1905.

## ACT 4.

AN ACT to increase the salary of the County and Probate Judge of Baxter County, Arkansas.

SECTION

1. Salary of County Judge of Baxter County fixed at $600.
2. Acts in conflict repealed; Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That section 7395 of Kirby's Digest of the laws of Arkansas be amended so as to read as follows:
Section 7395. The salary of the County and Probate Judge of Baxter County shall be six hundred dollars.

SECTION 2. All Acts and parts of Acts in conflict with this Act be and the same are hereby repealed, and this Act take effect and be in force from and after its passage.

Approved January 25, 1905.

## ACT 34.

AN ACT to amend Section 3 of Act 184, of the Acts of 1903.

SECTION

1. Amends Section 3, of Act 184, of General Assembly of 1903. Relates to three-mile law of Ashdown, Little River County.

2. Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Section three (3) of Act 184 of the Acts of 1903 shall be amended so as to read as follows: "Section 3. It shall be the duty of all sheriffs, deputy sheriffs, constables, deputy constables, marshals, deputy marshals, mayors, justices of the peace, living or residing within the territory described in section 1 of this Act, to arrest, cause to be arrested, and brought to trial, all persons violating the provisions of this Act, and any such officer having information or knowing of the violation of this Act, who shall fail or refuse to arrest, or cause to be arrested, and brought to trial the person violating the same, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined in any sum not less than fifty dollars."

SECTION 2. That this Act shall take effect and be in force from and after its passage.

Approved February 14, 1905.

## ACT 35.

AN ACT to encourage the study of Arkansas History, and to promote the spirit of patriotism in the public schools of Arkansas.

SECTION

1. Birthday of Robert E. Lee, January 19, to be observed in all public schools of Arkansas.

2. Superintendent of Public Instruction to prepare a program of exercises annually for the public schools of the State.

3. Duty of county examiners, superintendents and principals of public schools to aid in the work.

4. In force from passage.

*it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the 19th of January, the birthday of Robert Edward Lee, shall be observed in all the public schools of this State as a day for patriotic exercises and the study of the history and achievements of Arkansas men.

SECTION 2. The State Superintendent of Public Instruction is hereby authorized to prepare and publish annually for use in all the schools of the State, a program of exercises, dealing with events in the life of General Lee and other distinguished Southern men, giving attention to the achievements and work of eminent men who have made this State in civil and military life.

SECTION 3. It shall be the duty of county examiners, city superintendents, and principals of schools to carry on this work, and they shall arrange the

SECTION
1. Separate chancery, circuit and probate courts of the Wat... District, Desha County, abolished.
2. Pending actions transferred to the county seat.
3. Causes pending in Watson District to stand for hearing ... the January term, 1906.
4. All court papers, records, etc., to be removed to the co... seat.
5. Courthouse and courthouse property at Dumas donated ... the school district of Dumas for use of the public scho...
6. Laws in conflict repealed; Act in effect from passage.

*Be it enacted by the General Assembly of the State ... Arkansas:*

SECTION 1. That the separate circuit, chancery ... probate courts now provided for by law in the Wat... District of Desha County be, and the same are he... abolished, and that what has been formerly known as ... Watson District of said Desha County be dispensed ... and abolished.

SECTION 2. That all causes, actions, or proceedi... now pending in or before either the chancery court o... probate court of said Watson District be transferre... the chancery court or probate court at the county se... Desha County and stand for hearing or proper actio... the court at the next regular term of said chancery or... bate court at the county seat.

SECTION 3. That all causes, actions, or proceedi... civil and criminal, now pending before the circuit co... Desha County for the Watson District he, and the sam... by this Act transferred to the Desha Circuit Court fo... Arkansas City District, and shall stand for hearing t... regular January, 1906, term of said court, the sam... regards venue as though said causes had originally b... at said circuit court for said Arkansas City District.

SECTION 4. That all papers, records, and documents ...taining to any matters in any of the courts of said ...tson District, which are now the sheriff's, clerk's, or ...er officer's effects in said Watson District be within sixty ...ys after the passage of this Act removed to the appro-...ate office in Arkansas City.

SECTION 5. That the courthouse and courthouse ...operty now situated and located at Dumas be delivered ...the school directors of the school district in which ...mas is situated for the use of the public school of said ...trict.

SECTION 6. All laws and parts of laws in conflict ...rewith are repealed, and this Act shall take effect and ...in force from and after its passage.

Approved February 25, 1905.

ACT 57.

ACT to declare a four-wire fence to be a lawful fence ...in Phillips County.

1. Four wire fence to be a lawful fence in Phillips County.
2. Laws in conflict repealed: Act in effect from passage.

*enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That a fence made of posts firmly set ...e ground, not more than sixteen feet apart, and five ...high, with four strands of fence wire fastened ...to, the first or bottom wire to be sixteen inches above ...ground, the second wire to be two feet above the

## ACT 88.

AN ACT to appropriate money to employ counsel and to pay costs to enforce the Anti-Trust Law.

Section

1. Five thousand dollars appropriated to prosecute Anti-Trust suits.

2. Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

Section 1. That the sum of $5,000, or so much thereof as may be necessary, be and the same is hereby appropriated out of any moneys in the State treasury not otherwise appropriated, to employ counsel to assist the Attorney General, and to pay costs in enforcing the Anti-Trust Law.

Section 2. The Attorney General may, in his discretion, employ such counsel to assist him as mentioned in section 1 of this Act, and the Auditor shall, upon certificate of the Attorney General, show the employment, and amount of costs and fees.

Section 3. That this Act shall take effect and be in force from and after its passage.

Approved March 14, 1905.

## ACT 89.

AN ACT to amend Section 1 of an Act approved February 25, 1897, amendatory of an Act entitled "An Act fixing the fees and salaries of the clerk and sheriff of Sharp County, approved April 19, 1895."

Section

1. Fixes fees and salary of sheriff and clerk of the circuit court of Sharp County.

2. Laws in conflict repealed; Act in force from passage.

Be it enacted by the General Assembly of the State of Arkansas:

Section 1. That Section 1 of an Act of the General Assembly of the State of Arkansas, approved February 25, 1897, fixing the fees of the clerk and sheriff of Sharp County, be amended to read as follows: That the fees and salary of the clerk of the circuit court of Sharp County, Arkansas, shall not exceed the sum of eighteen hundred dollars per annum, and out of this sum he shall pay for necessary deputies and assistants. And the said sum of eighteen hundred dollars shall be full compensation for the work and services of said clerk, that he is now, or may hereafter be required by law to perform as clerk of the circuit court and ex-officio clerk of the chancery, county, and probate courts and recorded of said county, and for all other official work.

Section 2. That all laws and parts of laws in conflict with this Act be, and they are hereby repealed, and this Act take effect and be in force from and after its passage.

Approved March 14, 1905.

## ACTS OF ARKANSAS

### 264  ACTS OF ARKANSAS

SECTION

1. Iron Mountain Railway required to establish a depot at Felton, Lee County.
2. Agent to be supplied to said station by the Iron Mountain Railway.
3. Depot to be established within sixty days after passage of Act.
4. Laws in conflict repealed; Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the St. Louis, Iron Mountain Southern Railway be required to establish within sixty after the passage of this Act, a depot at Felton station the Helena branch of said railway, in Lee County Arkansas.

SECTION 2. That a regular agent be appointed such depot and he be empowered and required to perform all the duties of a depot agent during reasonable office at said place.

SECTION 3. That the St. Louis, Iron Mountain Southern Railway be required to establish said depot within sixty days after the passage of this Act, and that on failure or refusal to do so they shall pay a fine of ten dollars a day for each day after the sixty days that they fail or refuse to establish said depot.

SECTION 4. That all laws and parts of laws in conflict with this Act be and are hereby repealed, and this Act take effect within the sixty days after passage.

Approved March 23, 1905.

### ACTS OF ARKANSAS  265

#### ACT 104.

ACT to increase the salary of the County and Probate Judge of Lonoke County, Arkansas.

1. Fixes salary of County Judge of Lonoke County at $1,000.
2. Laws in conflict repealed; Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That section 7435 of Kirby's Digest be the same is hereby amended so as to read as follows: salary of the County and Probate Judge of Lonoke County shall be one thousand dollars ($1,000) per ...

SECTION 2. That all laws and parts of laws in conflict herewith be and the same are hereby repealed, and that this Act take effect and be in force from and after its passage.

Approved March 23, 1905.

#### ACT 105.

ACT locating and establishing a regular station and requiring the building and construction of a depot, and the maintaining thereof, at Snow Crossing, in Columbia County, Arkansas, by the Louisiana and Arkansas Railroad Company, and requiring trains to stop there and receive passengers and freight, and prescribing penalties and damages for violation.

*Be it enacted by the General Assembly of the Stat...*

SECTION 1. In all cases where loss occurs, and [...]
fire, life, health, or accident insurance company liable th[...]
for shall fail to pay the same within the time specified in
policy, after demand made therefor, such company shall
liable to pay the holder of such policy, in addition to
amount of such loss, 12 per cent damages upon the am[...]
of such loss, together with all reasonable attorneys' fee
the prosecution and collection of said loss; said attorn[...]
fee to be taxed by the court where the same is heard
original action, by appeal or otherwise, and to be taxed
as a part of the costs therein and collected as other c[...]
are, or may be by law collected.

SECTION 2. That all laws and parts of laws in [...]
flict herewith be and the same are hereby repealed, and[...]
Act shall take effect and be in force from and aft[...]
passage.

Approved March 29, 1905.

---

## ACT 116.

AN ACT to prevent the sale or giving away of native w[...]
vinous, ardent, malt, or fermented liquors within[...]
miles of the Vilonia Methodist Church House[...]
Faulkner County, Arkansas.

SECTION

1. Unlawful to sell or give away intoxicating liquor[...]
   five miles of Vilonia Methodist Church House, F[...]
   County.
2. Laws in conflict repealed; Act in force from passage.

---

...e enacted by the General Assembly of the State of
...Arkansas:

SECTION 1. That hereafter it shall be unlawful for
...person to sell, or cause to be sold, or give away, or
...e to be given away, in Faulkner County, within five
...miles of the Methodist church house, situated in the
of Vilonia, in the County of Faulkner, in township
...rth, range 11 west of the fifth principal meridian of
...nsas, any native wine, ardent, vinous, malt, or fer-
...d liquors, in any quantity whatever; *provided*, that
...ing in this Act shall be so construed as to interfere with
...e of wine for sacramental purposes when administered
...ding to the uses of any religious denomination; or with
...ght of any citizens to use any of the forbidden articles
...d in this Act for their families and their residences.

SECTION 2. Any person violating the provisions of
...Act shall on conviction be fined in any sum not less than
...dollars nor more than two hundred dollars.

SECTION 3. That all laws and parts of laws in con-
...herewith are hereby repealed, and this Act shall take
...and be in force from and after its passage.

Approved March 29, 1905.

---

## ACT 117.

ACT to provide for the reprinting and sale of Arkansas
Supreme Court Reports.

Board of commissioners to let contract to print certain
volumes of the Supreme Court Reports.
Price at which said reports shall be sold.

563

ACTS OF ARKANSAS

3. Failure to comply with ordinance deemed a public nuisance and subject to fine on conviction.

4. Laws in conflict repealed; Act in force from passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Upon the petition of a majority of the ...rs of lots or parts thereof, any district comprising one more blocks fronting on any residence street in any city the second class, the city council shall have the power prohibit by ordinance the use of the front part of said for the distance of two-thirds of the depth thereof n such street, for stables, barns, or other outhouses, or stock lots; *provided,* that persons already so using such ...perty shall have six months in which to remove such ...dings or discontinue such use.

SECTION 2. The petitions and ordinance mentioned ...he foregoing section shall set forth the metes and bounds ...he proposed district, which shall include both sides of ...a resident street, not to exceed one-half the distance ...ough such block; *provided,* it shall be immaterial in ...t part of the proposed district the petitioners' property ...so that such petition contains a majority of all property ...ners in such district.

SECTION 3. The continued occupancy of such lots by ...owner contrary to the terms of such ordinance, when ...y passed, shall constitute a public nuisance, and the owner ...proprietor of same shall, upon conviction, be fined in any ...not less than $5 and not to exceed $15 per day for such ...ntinued violation thereof.

SECTION 4. All laws and parts of laws in conflict ...with are hereby repealed, and this Act shall take effect ... be in force from and after its passage.

[This bill having remained with the Governor five days (Sunday ...ted) and the General Assembly being in session, it has become ...w this May 2, 1905.]

---

562

ACTS OF ARKANSAS

1. Relates to peddling of beef, in Desha, Chicot and part ... Ashley County.

2. Laws in conflict repealed; Act in force from passage.

*Be it enacted by the General Assembly of the State ... Arkansas:*

SECTION 1. That Section 3 of said Act be amend... to read as follows: Section 3. That any person violati... any of the provisions of section 1 of this Act, shall ... deemed guilty of a misdemeanor, and upon conviction sh... be fined in any sum not less than twenty-five dollars n... more than two hundred and fifty dollars; *provided, that t...* provisions of this Act apply only to the counties of Desh... Chicot, and that portion of Ashley east of Bayou Ba... tholomew.

SECTION 2. That all laws and parts of laws in co... flict herewith be, and the same are hereby repealed, and th... Act take effect and be in force from and after its passage.

[This bill having remained with the Governor five days (Sund... excepted) and the General Assembly being in session, it has beco... a law this May 1, 1905.]

ACT 222.

AN ACT extending the powers of cities of the second cla... in certain cases.

SECTION

1. Extends the powers of cities of the second class.

2. Character of petitions.

KANSAS CITY LIFE INSURANCE CO.

# ACTS

## CONCURRENT RESOLUTIONS, MEMORIALS

### and

## PROPOSED CONSTITUTIONAL AMENDMENTS

OF THE

# Forty-fifth General Assembly

OF THE

# STATE OF ARKANSAS

Passed at the Session held at the Capitol, in the City of Little Rock, Arkansas, convening on the 12th day of January, 1925, and adjourning on the 12th day of March, 1925.

BY AUTHORITY

DEMOCRAT PRINTING & LITHOGRAPHING CO.
LITTLE ROCK

This book belongs to Law Library
K. C. Life Ins. Co.

xl

## TABLE OF CONTENTS.

### HOUSE CONCURRENT RESOLUTIONS.

Number            Page

1 Joint Session, Gov. McRae's Farewell Message ............ 1103

4 To investigate Agri. School at Monticello ............ 1103

8 Urges U. S. Constitutional Amendment to tax certain Securities now exempt ............ 1105

9 Joint Session, Speaker to declare Election on Constitutional Amendments ............ 1106

11 Committee to investigate Constitutional Status of Legislature ............ 1107

12 To investigate Federal Road Equipment disposal ............ 1108

13 To rush Report on House Res. No. 12 ............ 1109

14 To investigate securing Camp Pike lands ............ 1110

16 Names S. B. No. 100 and H. B. No. 88 ............ 1110

17 Names of all Streams on Bridges ............ 1111

19 Speaker to canvass Returns on Proposed Constitutional Amendment No. 16 of 1913 ............ 1113

20 Walker Powell, In Memoriam ............ 1113

Senate Bills that became Acts ............ 1115

House Bills that became Acts ............ 1117

Index ............ 1130

---

Act 1]        ACTS OF ARKANSAS.        1

## ACT 1.

AN ACT to create a special school district, to be known as "Belleville Special School District No. 39," defining its boundary enabling it to borrow money and mortgage the property of the district to secure the same and for other purposes.

### SECTION

1. Territory embraced.
2. Names directors, terms, duties.
3. District to borrow money.
4. Form of notes and mortgages.
5. All rights saved to districts.
6. Conflicting laws repealed, in force from passage.

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

SECTION 1.   That the following described territory shall be and the same is hereby organized and formed into and declared to be "Belleville Special School District No. 39," of Yell County, Arkansas, to-wit:

The Southwest Quarter of the Southwest Quarter of Section Two; the Southeast Quarter of the Southeast Quarter, the West Half of the Southeast Quarter, and all of the Southwest Quarter of Section three; all of Section Four; the East Half of the Southeast Quarter the Southwest Quarter of the Southeast Quarter and all of the Southwest Quarter

## ACT 9.

AN ACT To Make the County Judge of Cross County, Arkansas, Ex-Officio Road Commissioner of Cross County, Arkansas.

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas.*

1. That from and after the passage of this Act, the County Judge of Cross County shall be ex-officio road commissioner of said county, and shall perform all the duties required by law of road commissioner.

2. That the salary of said ex-officio road commissioner of Cross County shall be Eight Hundred Dollars, payable quarterly out of the various road districts in Cross County, each district to bear its pro rata share.

3. That all laws and parts of laws in conflict with this Act are hereby repealed.

4. This Act being necessary for the immediate preservation of the public peace, health and safety an emergency is hereby declared to exist and this Act shall take effect and be in force from and after its passage.

Approved: January 28, 1925.

## ACT 10.

AN ACT To Transfer the sum of $1,312.64 from the County Interest Fund of Phillips County Arkansas to the County Currency Fund of Phillips County Arkansas.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the sum of $1,312.64 now to the credit of the County interest fund of Phillips County, Arkansas, be and the same is hereby transferred to the County currency fund of Phillips County, Arkansas.

SECTION 2. This Act being necessary for the preservation of the peace, health and safety of the public an emergency is hereby declared to exist and this Act shall take effect and be in force from and after its passage.

Approved: January 28, 1925.

## ACT 11.

AN ACT Relating to the Salaries and Fees of the Officers of Polk County.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. The retention by the Circuit Clerk, Treasurer, Sheriff and Collector of Polk County and

126        ACTS OF ARKANSAS.        [ACT 37

the same by suit as prescribed in the general drainage laws under which this district was originally organized.

SECTION 12. No injunction or process shall issue to stay any work contemplated by this act or the collection of any tax hereunder until the party applying therefor shall first enter into a bond with good and sufficient sureties to be approved by the judge of the court granting the same and payable to the board of commissioners of said district for the benefit of said board and all persons interested, conditioned for the payment of all damages and costs which may be sustained by granting same if wrongfully granted, nor shall any such injunction be granted except upon ten days written notice to the President of said Board of Commissioners, which notice shall state the time and place of the intended application for such injunction and any injunction issued in violation of this act shall be not voidable, but void and of absolutely no effect.

SECTION 13. Should any part of this act be declared to be unconstitutional, it shall not affect the remainder of the act.

SECTION 14. This Act being necessary for the immediate preservation of the public peace, health and safety an emergency is hereby declared and it shall take effect and be in force from and after its passage.

Approved: February 7, 1925.

---

ACT 38]        ACTS OF ARKANSAS.        127

## ACT 38.

AN ACT to Repeal Act No. 84 of the General Assembly of the State of Arkansas, Approved March 13, 1905 Creating the Office of Tax Collector for Madison County, and to Repeal Act No. 339 of the General Assembly of the State of Arkansas: Approved March 23, 1921, Entitled "An Act to Prescribe the Compensation of the Sheriff of Madison County, Arkansas, and for other Purposes."

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

SECTION 1. That Act No. 84 of the General Assembly of the State of Arkansas, approved March 13, 1905 creating the office of Tax Collector of Madison County be and the same is hereby repealed, and the Sheriff of Madison County shall be ex-officio Collector of Madison County and shall receive the same fees for collecting taxes as is now fixed by law.

SECTION 2. That Act No. 339 of the General Assembly of the State of Arkansas, approved March 23, 1921 being an Act to prescribe the compensation of the sheriff of Madison county, Arkansas and for other purposes, be and the same is hereby repealed, and the sheriff and jailer of Madison County shall receive the same fees, prescribed by law prior to the passage of said Act No. 339.

168

ACT 55.

AN ACT To Increase the Salary of the County Treasurer of Crawford County, Arkansas.

*Be It Enacted by the General Assembly of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

SECTION 1. That the salary of the County Treasurer of Crawford County shall be paid Eighteen Hundred ($1,800.00) Dollars per year.

SECTION 2. That this Act shall repeal all acts that are in conflict with this Act.

SECTION 3. This Act shall go into effect from its passage and approval by the Governor.

Approved: February 11, 1925.

---

ACT 56.

AN ACT To Amend Section Three of Act Number Two Hundred and Eighty Eight of the Acts of 1923, Entitled, "An Act to Create School District Number Six of Franklin County into a Rural Special School District," and Approved March 2, 1923.

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

SECTION 1. That section number three of Act number two hundred and eighty eight of the Acts of 1923, entitled, "An Act to Create School District Number Six of Franklin County into a rural special school district," approved March 2, 1923 be, and the same is hereby amended to read as follows:

SECTION 3. That the boundaries of said District shall be described as follows: Beginning at the northeast corner of the northwest quarter of the southeast quarter of section nine township eight north, range twenty-seven west, running thence west to the northwest corner of the southeast quarter of section seven, of said township and rang, thence south to the southwest corner of said southeast quarter of said section seven, thence west to the northwest corner of the northeast quarter of the northwest quarter of section eighteen, said township and range, thence south to the southwest corner of the said northeast quarter of the northwest quarter of said section eighteen, thence west to the northwest corner of the southwest quarter of the northwest quarter of said section eighteen, thence south to Hurricane Creek, thence following the meanderings of said Creek in its course east and south to a point where said Creek intersects the line between sections nineteen and twenty, said township range, thence south to the southwest corner of said section twenty, thence east to the southeast corner of the southwest quarter of section twenty-one said township and range, thence north to the northeast corner of southwest quarter of Section sixteen, said town-

222    ACTS OF ARKANSAS.    [ACT 72, 73

## ACT 72.

AN ACT to better protect Fur Bearing Animals in Poinsett County.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That, in Poinsett County, the opening of the season during which fur bearing animals may be legally trapped, hunted, caught, killed or taken, except when found destroying crops, poultry, live stock, or property, shall be and is hereby fixed to be November tenth.

SECTION 2. All laws and parts of laws in conflict herewith are hereby repealed, and this act shall take effect and be in force from and after its passage.

Approved: February 14, 1925.

## ACT 73.

AN ACT To Provide for a County Supervisor of Schools for Poinsett County, to Prescribe the Manner of Election, Define the Powers, Duties and Qualifications and fix the Salary of Said Officer, and for Other Purposes.

SECTION:

1. Scope of County Supt. of Schools, qualifications.
2. Powers, duties, supplants board of education.

---

ACT 73]    ACTS OF ARKANSAS.    223

3. Other duties and powers.
4. Records.
5. School boundary lines, changes.
6. Appeals, meetings.
7. Turn over of records, repeals, creation of board of education and supt. of schools.
8. Oath, bond.
9. Special election, date.
10. Salary.
11. Election certificate.
12. Salary adjustments.
13. Conflicting laws repealed, emergency, in force from passage.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That from and after the passage of this Act, all of the public schools of Poinsett County, shall be under the general supervision, direction and control of a County supervisor, of schools.

Said supervisor shall be at least twenty-five years of age, a qualified elector of the county, of good moral character, and shall have had at least five years actual experience as a teacher in the public schools of the State of Arkansas; and shall have two years credit for work done in some college of university.

SECTION 2. Said supervisor shall have supervision, direction and control of all of the public schools of the county, and shall have all the powers and discharge all the duties pertaining to public schools,

said disability being determined by competent physicians and surgeons who treated him, and:

WHEREAS, during such drill period he was not in federal service and federal funds are not available for compensating soldiers under such circumstances; now, therefore;

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. That the State of Arkansas hereby acknowledges its obligation to Julius Koehler for the injury sustained and to be borne by him in the future, as the result of the injury received by him while in line of duty on November 9, 1923, as a member of the Arkansas National Guard. And it is hereby declared that he should be compensated, for the suffering and physical incapacity already endured, in the sum of $500.00 to be due and payable to him on the first day of July, 1925, and that he should be paid the sum of $60.00 for each month, beginning March 1, 1925, so long as his disability resulting from said injury shall continue.

SECTION 2. It is hereby made the duty of the State Auditor to ascertain the physical or mental condition of the said Julius Koehler not less than once every two years while this law continues effective. He shall proceed to ascertain this condition sooner or more often if in his judgment the circumstances justify such action. If upon any such investigation the Auditor shall determine that no disability exists, as

regards such injury, then he shall make no more payments as provided for in this law, and the obligation of the State as herein acknowledged shall cease. In applying for the payments herein provided for the said Julius Koehler shall be required, by the Auditor, to execute such written application as the Auditor may deem necessary.

SECTION 3. To meet the obligation herein acknowledged for biennium ending June 30, 1927, there is hereby appropriated to be payable out of the General Revenue fund the sum of $2,180.00.

SECTION 4. This act shall take effect and be in force from and after its passage and approval.

Approved: March 21, 1925.

ACT 186.

AN ACT To Make an Appropriation to pay the unpaid Salary of Ex Officio State Warehouse Commissioner from July 1, 1921 to December 31, 1924, inclusive, a period of forty two months.

Be It Enacted by the General Assembly of the State of Arkansas

SECTION 1. That the sum forty two hundred ($4200.00) dollars is hereby appropriated to be paid from the General Revenue Fund and shall be paid to Jim G. Ferguson, former Commissioner of Mines,

College is situated within the boundaries of said Road Improvement District No. 2 and

*Whereas* the road running through the lands owned by the State in said District is a part of the State Highway System, therefore

*Be It Enacted by the General Assembly of the State of Arkansas*

SECTION 1. The Commissioner of State Lands, Highways and Improvements is hereby authorized and directed to draw a voucher in favor of the Commissioners of Road Improvement District No. 2, Pope County, Arkansas, in the sum of Forty Thousand One Hundred Ninety Four ($40194.00) Dollars; and the Auditor of the State of Arkansas, on presentation of said voucher, is hereby authorized and directed to issue a warrant in said sum on the Treasurer of the State of Arkansas payable as herein specified; and the Treasurer of the State of Arkansas is hereby authorized and directed to pay over, on presentation of said warrant, to the Commissioners of Road Improvement District No. 2, Pope County, Arkansas, the said sum of Forty Thousand One Hundred Ninety Four Dollars, out of the Highway Improvement Fund.

SECTION 2. There is hereby appropriated out of the Highway Improvement Fund the sum of Forty Thousand One Hundred Ninety Four Dollars for the purpose of paying the said sum as herein provided.

SECTION 3. That all laws or parts of laws in conflict herewith be and the same are hereby repealed, and

this Act being necessary for the immediate preservation of the public peace, health and safety an emergency is declared and the same shall be in full force and effect from and after its passage.

Approved: March 28, 1925.

ACT 269.

AN ACT to Provide for the Refunding to the Millage Funds in the Treasury to the Credit of the First District State Agricultural School Amounts Erroneously Appropriated and Disbursed from this Fund by Act No. 262 of the Acts of 1920.

*Bt It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of the State of Arkansas:*

SECTION 1. That the State Treasurer and the Auditor of State be, and they are hereby authorized and directed to cause their respective records to show the transfer of six thousand fifty dollars and ten cents ($6,050.10) from the General Revenue Fund to the Millage Fund of the First District State Agricultural School, said transfer to be made immediately after the approval of this Act.

SECTION 2. The purpose of this Act is to reimburse the Millage Fund of the First District State Agricultural School for funds erroneously appropriated and

## ACT 122.

AN ACT To Provide for the Purchase of a Special Motor Vehicle for use in Transporting Tubercular Patients from the Booneville Station to the Sanatorium.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That there is hereby appropriated, to be payable from the charities fund, the sum of three thousand dollars or so much thereof as may be necessary for the purchase of a specially built motor vehicle for use in transporting tubercular patients from the railroad station at Booneville to the Tuberculosis Sanatorium.

SECTION 2. This Act being necessary for the immediate preservatoin of the public peace, health and safety, an emergency is hereby declared and this Act shall take effect and be in force from and after its passage.

Approved: February 27, 1925.

## ACT 123.

AN ACT To Repeal Section 9956 Crawford & Moses Digest.

*Be It Enacted by the General Assembly of the State of Arkansas:*

*Be It Enacted by the People of Arkansas:*

SECTION 1. Section 9956 Crawford & Moses Digest requiring Building & Loan Associations operating in this State to file list of stockholders with County Clerk and Tax Commission is hereby repealed.

SECTION 2. This act shall be in force from and after its passage.

Approved: February 27, 1925.

## ACT 124.

AN ACT Validating and Confirming the Assessment of Benefits in Tucker Lake Levee and Drainage District of Jefferson County Arkansas and for Other Purposes.

SECTION:

1. Validates assessments.

2. Sufficient notice.

3. Amends Section 3615 Crawford & Moses Digest, County clerk, assessments, publication of judgement, appeal.

4. Emergency, in force from passage.

WHEREAS, the assessment of benefits in Tucker Lake Levee and Drainage District of Jefferson County, Arkansas, has been duly made and filed end the notice of the filing of said assessment has been published for the time required by law in a newspaper issued and having a general circulation in said county,

Fund" for the biennial period ending June 30, 1927, for aiding the counties of the State in paying the salaries of the county superintendents, as provided for in section 3, Act 503, of Acts of 1921.

For The Fiscal Year Ending June 30, 1926 ———— $105,000.00

For The Fiscal Year Ending June 30, 1927 ———— 105,000.00

SECTION 2. This act shall take effect and be in force from and after its passage and approval.

Approved: March 28, 1925.

ACT 285.

AN ACT to Make Appropriations From the Firemens Pension Fund.

Be It Enacted by the General Assembly of the State, of Arkansas:

SECTION 1. There is hereby appropriated, to be payable from the Firemen's Pension Fund, the following:

FOR THE FISCAL YEAR ENDING JUNE 30, 1926.

For payments to City Treasurers, as is provided by Section 13 of Act 491 of 1921, the 1926 receipts into this fund, up to the amount of ———— $45,000.00

FOR THE FISCAL YEAR ENDING JUNE 30, 1927.

For payments to City Treasurers, as is provided by Section 13 of Act 491 of 1921, the 1927 receipts into this fund, up to the amount of ———— $45,000.00

SECTION 2. There is hereby appropriated to be payable from the Firemens Pension Fund, during the fiscal year ending June 30, 1926, to City Treasurers, as provided by Section 13 of Act 491 of 1921, any balance of the 1925 receipts which is in the State Treasury on July 1, 1925, not to exceed, however, the amount of ———— $10,000.00

SECTION 3. This Act shall take effect and be in force from and after its passage and approval.

Approved: March 28, 1925.

ACT 286.

AN ACT to Make Appropriations for the Operation, Support and Maintenance of the State Penitentiary.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. There is hereby appropriated, to be payable from the Penitentiary Fund, derived from the earnings of the State Penitentiary, the following:

# ACTS

## JOINT RESOLUTIONS

## CONCURRENT RESOLUTIONS AND

## CONSTITUTIONAL AMENDMENTS

OF THE

# Fifty-Fifth General Assembly

OF THE

## STATE OF ARKANSAS

Passed at the Regular Session held at the Capitol in the City of Little Rock, Arkansas, convening on the 8th day of January, 1945, and adjourning on the 8th day of March, 1945.

BY AUTHORITY

Arkansas Printing & Lithographing Company
Little Rock, Arkansas

they desire the protection afforded by being included under a retirement system, and

WHEREAS, qualified individuals are refusing to enter municipal employment, because such protection is not given, and

WHEREAS, municipal employees are not now covered by Social Security, and

WHEREAS, municipal payrolls now include many elderly employees whose productive capacity has been impaired, and

WHEREAS, the retention of aged individuals tends to induce other employees on the same job to slacken their efforts to the same level of production,

NOW THEREFORE,

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That any incorporated municipality now or hereafter incorporated under the laws of the State of Arkansas shall have the power by a majority vote of its City Council or legislative body to provide for, establishing and maintaining, a system or systems of social security and/or old age pensions for its employees, that are not now covered by social security or old age pension acts, under such terms and conditions as said city council or legislative body may enact.

SECTION 2. That this act shall take effect from and after its passage, the public welfare requiring it.

APPROVED: January 31, 1945.

## ACT 11.

AN ACT to Fix the Time of Holding Circuit Court in the Southern District of Logan County.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Circuit court for the Southern district of Logan county shall be held on the third Mondays in April and October in each year.

SECTION 2. All laws and parts of laws in conflict herewith are hereby repealed.

APPROVED: January 31, 1945.

## ACT 12.

AN ACT to Facilitate the Refunding of Bonds.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Where refunding bonds are to be issued by any municipality, county, state supported education institutions or improvement district of any kind and the bonds to be refunded cannot be presented for payment and cancellation simultaneously with the payment and delivery of the refunding bonds, the refunding bonds may be delivered when the purchase money is deposited in trust, for the purpose of payment of the principal on and interest of the bonds to be refunded, with any insured bank or trust company in the state and which is otherwise fully qualified to receive trust funds; provided, the bonds to be refunded have fixed maturity dates of not to exceed twelve months from the date of the payment and delivery of the refunding bonds or are redeemable before maturity and have been duly called for payment. If such bank or trust company is not the paying agent for the bonds to be refunded, said purchase money shall be paid over by it to the paying agent three days before the maturity of said bonds or three days before the date for which such bonds have been called for payment.

SECTION 2. All laws or parts of laws in conflict herewith be and are hereby repealed.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Section 7554 of Pope's Digest of the Statutes of Arkansas is hereby amended to read as follows:

Section 7554. JURISDICTION TO APPOINT. Whenever any insane person or person of unsound mind is confined in the State Hospital of this State, or in any Veteran's Facility or Hospital operated by the United States Government in this State which is operated solely for the treatment of mental diseases and disorders, or in any hospital outside of this State operated by the State or the United States Government solely for the treatment of mental diseases and disorders, the Probate Court of the County of which such person is a citizen shall have power to appoint a guardian for such person without requiring the presence of such person before the Court."

SECTION 2. This Act shall not repeal Act 177 of the Acts of the General Assembly for 1943 and shall not interfere with the procedure provided for therein but shall be cumulative thereto.

SECTION 3. It has been determined by the General Assembly that numerous insane persons and persons of unsound mind are now confined in the institutions mentioned in Section 1 of this Act, many of whom own property in the State of Arkansas, and who should have a guardian appointed for them, and that it is impossible in many instances for such persons to appear before the Probate Court having jurisdiction to appoint such guardians, which said condition makes it impossible in many instances for the property of such persons to be operated, transferred or sold, thereby creating an emergency. Therefore, this Act shall be in full force and effect from and after its approval.

APPROVED: February 9, 1945.

## ACT 35.

AN ACT to Remove Legal Disabilities of World War II Veterans Who Are Less Than Twenty-One Years Old.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. All veterans of World War II, male and female, (except such as have been or may hereafter be declared by a court of appropriate jurisdiction to be incompetent) shall, even though they may be of less than legal age as heretofore defined by the laws of this state, be as fully competent as if of full legal age in respect or relation to all matters and things related or connected, directly or indirectly, to the application for, obtaining, and derivation of benefit from all rights, grants, loans, and privileges conferred or provided by any law of the United States or of any state or by any other governmental agency or by any private agency; and every step taken and every act and thing done or performed by any such veteran in, in respect of, in relation to, or in connection with the application for, the procuring, the receiving, the use or employment of, or the disbursement or expenditure of any benefit, right, grant, loan, or privilege conferred or provided by any law of the United States or of any state or by any other governmental agency or by any private agency for such veteran, including but not limited to the purchase of property, real or personal, the borrowing of money and the execution of mortgages, deeds of trust and other conditional conveyances, the acquisition and operation of businesses (including farming), and the sale, exchange or other conveyance or disposal of property, real or personal, or of businesses, shall be as valid and enforceable, and binding as if such veteran were of full legal age.

SECTION 2. The word "veteran" as employed herein shall include all persons who are found to be eligible under

WHEREAS, The Arkansas State Highway Commission has, by its resolution, and by its representation in United States District Court, allocated all funds received by it from the disbursement made as aforesaid to the sole purpose of rebuilding the destroyed facilities and roads, and

WHEREAS, The war time restrictions on materials and manpower prevent the building at this time of the roads and facilities contemplated for the replacement of those destroyed by the Federal Government in the building of the Norfork Dam

NOW, THEREFORE,

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That all funds received by the State of Arkansas and the Arkansas State Highway Commission from the Federal Government in the cause pending in the District Court of the United States Western District of Arkansas, Harrison Division, under the style of United States of America vs. Certain Parcels of Land in Baxter County, Arkansas, and the State of Arkansas, et al, be, and they are hereby irrevocably allocated and pledged to the construction and reconstruction of roads and bridges and ferry operation in the Norfork Dam area found necessary to replace the roads and bridges destroyed or rendered useless by reason of the building of the Norfork Dam by the Federal Government.

SECTION 2. Any citizen and tax payer in the State of Arkansas shall have the right to restrain any diversion of said funds or interest derived therefrom from these purposes by proceedings filed in the Pulaski Chancery Court.

SECTION 3. That all laws and parts of laws in conflict herewith are hereby repealed, and this Act being necessary to conserve and properly allocated the funds of the State of Arkansas and to insure against a diversion thereof to any

unauthorized use, an emergency is hereby declared and this Act shall take effect and be in full force from and after its passage.

APPROVED: February 15, 1945.

_____

## ACT 53.

AN ACT to Create a State Board of Fiscal Control and to Prescribe Its Functions, Powers and Duties; to Abolish Certain State Boards and Commissions; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. CREATES STATE BOARD OF FISCAL CONTROL. There is hereby created and established at the seat of government of this state a State Board of Fiscal Control, hereinafter referred to as the Board, whereof the Governor, Secretary of State, Treasurer of State, Auditor of State, Attorney General, State Comptroller, Director of Highways, Commissioner of Revenues and Bank Commissioner shall constitute the members. The Bond Approval Board, State Depository Board, State Investment Board, Refunding Board, State Debt Board, Emergency War Board, Special Claims Commission, State Agricultural Credit Board, State Pension Notes Board, and Arkansas Construction Commission, respectively as now established and constituted, are hereby abolished, and all of the functions, powers and duties of each of them as now provided by law are hereby transferred to, and conferred and imposed upon the Board. The Board shall also have and be subject to all such other and further functions, powers and duties as by this Act are conferred or imposed upon it; and for the purpose of regulating its own procedure and carrying out its said transferred or newly provided functions it shall have authority from time to time to make and amend, and enforce all neces-

172        ACTS OF ARKANSAS.        [ACTS 73, 74

## ACT 73.

AN ACT to Authorize Quorum Courts to Appropriate Money for the Purchase of an American Flag and to Require County Courts to Purchase and Display a Flag.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1.   The Quorum Courts of the Counties of the State are hereby authorized to appropriate out of the County General Funds sufficient sums to purchase suitable American Flags, flag poles and other appliances necessary for the display of an American Flag upon or near each courthouse in the State.

SECTION 2.   It shall be the duty of each County Court in this State, a sufficient sum having been appropriated, or otherwise provided therefor, to purchase or otherwise acquire and display on or near the courthouse or courthouses of their counties a suitable American Flag, unless such Flag is being displayed through other means.

SECTION 3.   Such Flag shall be displayed at all times, except at times when the County Judge deems the weather unfavorable for such display.

SECTION 4.   It is the sense of the General Assembly that the etiquette of the American Flag be observed wherever displayed.

APPROVED:   February 21, 1945.

---

## ACT 74.

AN ACT to Repeal Act 320 of the Acts of the General Assembly of 1941.

*Be It Enacted by the General Assembly of the State of Arkansas:*

---

ACT 75]        ACTS OF ARKANSAS.

SECTION 1.   That Act 320 of the Acts of 1941 of the General Assembly of the State of Arkansas, be and the same is hereby repealed.

SECTION 2.   There being an acute shortage of surveyors due to war conditions, therefore, an emergency is hereby declared to exist and such repeal being necessary for the preservation of the public peace, health and safety, this act shall take effect and be in full force and effect from and after its passage.

APPROVED:   February 21, 1945.

---

## ACT 75.

AN ACT to Amend Section 11626 of Pope's Digest and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1.   Section 11626 of Pope's Digest is and the same is hereby amended to read as follows:

"Section 11626, Teachers Meetings.   Teachers meetings shall be held in the County for the purpose of General exchange of ideas in the working of the schools at such times as may be fixed by the County Board of Education, and shall be held in the several school Districts at such times as may be fixed by the boards of Directors, provided that two or more counties may hold joint meetings at a place agreed on by the County Board of Education of all counties concerned.   All teachers except those teaching in schools in a city having a population of five thousand (5,000) or more inhabitants, are required to attend all teachers meetings called by the County Supervisor of Schools."

SECTION 2.   All laws and parts of laws in conflict herewith are hereby repealed.

APPROVED:   February 21, 1945.

jail sentences or the imposition of fines, or both, in all criminal cases, pending before said courts.

APPROVED: March 2, 1945.

---

ACT 159.

AN ACT to Provide for the Creation of a Commission on Uniform State Laws, the Appointment of Commissioners Thereto, and Making an Appropriation for the Same.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Appointment of Commission. A Commission is hereby created to be known as the Commission on Uniform State Laws which shall consist of three recognized members of the bar who shall be appointed by the Governor for terms of four years each and until their successors are appointed, and in addition thereto any residents of this State who, because of long service in the cause of uniformity of state legislation, shall have been elected life members of the National Conference of Commissioners on Uniform State Laws.

SECTION 2. Appointment to fill vacancies. Upon the death, removal from State, resignation, failure or refusal to serve of any appointed Commissioner, his office becomes vacant; and the Governor shall make an appointment to fill the vacancy, such appointment to be for the unexpired term of the former appointee.

SECTION 3. Meeting and Organization. The Commissioners shall meet at least once in two years and shall organize by the election of one of their numbers as Chairman and another as Secretary, who shall hold their respective offices for a term of two years and until their successors are appointed.

---

366      ACTS OF ARKANSAS.      [ACT 158

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. No personal liability shall arise against any director, trustee, officer or agent of any insurance company by reason of any payment made by or on behalf of such company on account of any taxes, licenses or fees paid pursuant to any statute, law or ordinance, even though such statute, law or ordinance be subsequently declared or held to be invalid.

SECTION 2. It has been found by the General Assembly that by reason of the possibility that liability may attach upon the payment of taxes, licenses and fees under statutes, laws or ordinances which are subsequently declared unconstitutional, that there is a disinclination on the part of officials of insurance companys to pay such taxes without the benefit of the decision of a court of final resort and that the withholding of the payment of taxes to the State and other political sub-divisions would bring about a serious impairment of funds available for the public health and other programs and that therefore an emergency exists and is hereby declared for the immediate preservation of the public peace, health, and safety and this act shall take effect and be in force from and after its passage.

APPROVED: March 2, 1945.

---

ACT 158.

AN ACT to Permit Courts of Record to Suspend Sentence in Criminal Cases.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Hereafter, all courts of record in this State shall have the authority to suspend the execution of

530          ACTS OF ARKANSAS.          [ACT 230

exists, and this Act shall take effect and be enforced from and after its passage.

APPROVED: March 20, 1945.

---

ACT 230.

AN ACT to Make Appropriation for the Purchase of Equipment for the State Police Department.

WHEREAS, the Department of Arkansas State Police now has forty (40) cars in operation, twenty-one (21) of which are equipped with radio receivers only, and only seventeen (17) of which are equipped with two-way transmitters, and

WHEREAS, of the seventeen (17) cars equipped with two-way transmitters, only five (5) are equipped with hig-power 50-Watt FM transmitters and twelve (12) cars have low-power 15-Watt AM transmitters which have been in use by the Department for about four years and should be considered obsolete, and

WHEREAS, six (6) new 15-Watt FM transmitters are now on hand and can be installed; such transmitters can only be installed in cars operating in District 1, since this is the only District now having a receiver and antenna for FM reception, and

WHEREAS, it has been found that the efficiency of the State Police Department will be greatly increased by the installation of the high-power radio installation; therefore,

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. There is hereby appropriated, to be payable from the General Revenue Fund, for the purchase and installation of high-power radio equipment by the Arkansas State Police Department, the following:

(1) Thirty 50-Watt FM Transmitters at $300.00 .......... $ 9,000.00
(2) Six FM Station Receivers at $210.00 .......... 1,260.00
(3) Four FM Coaxial Antennae at $150.00 .......... 600.00
(4) One-Thousand Feet of 7-8 inch Copper Coaxial Cable at $600.00 .......... 600.00
(5) Nitrogen gassing equipment .......... 100.00
(6) Heavy-Duty Generators and Batteries .......... 750.00

TOTAL .......... $12,310.00

SECTION 2. It is ascertained by the General Assembly that a large part of the radio equipment now used by the Department of Arkansas State Police is obsolete and that the efficiency of said Department would be greatly increased by the purchase and installation of modern and adequate radio equipment, and an emergency therefore exists and this act shall be in force and effect from and after its passage and approval.

APPROVED: March 20, 1945.

---

ACT 231.

AN ACT to Create and Establish the Department of Arkansas State Police, the Arkansas Police Commission, to Prescribe the Powers and Duties Thereof, and for Other Purposes.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. For the purpose of enforcing the motor vehicle laws, traffic laws and other state laws relating to protecting and properly maintaining the State Highway System of the State of Arkansas and to render more effective the apprehension of criminals and the enforcement of criminal law, there is hereby created the Department of

# ACTS

OF THE

## Sixty - Fifth General Assembly

OF THE

# STATE OF ARKANSAS

IN REGULAR SESSION

January 11, 1965 - March 11, 1965

INCLUDING

EXTRAORDINARY SESSIONS

March 24, 1964 - March 27, 1964

and

May 24, 1965 - June 8, 1965

STATE OF ARKANSAS

BY AUTHORITY

Paragon Printing Company

Little Rock, Arkansas

## ACT 10

AN ACT to Amend Section 1 of Act No. 53 of 1943 (Ark. Stats., 80-714); to Provide for a More Equitable Allowance to School Districts Educating Orphans or Homeless Children; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That Section 1 of Act No. 53 of 1943, the same being Section 80-714 of the Arkansas Statutes (1947), be and the same is hereby amended to read as follows:

"SECTION 1. The State Board of Education is hereby directed to apportion funds each year out of the Public School Fund to any public school district in this State in which is located an institution which is a home for orphans or homeless children to assist in the education in such children. Only children who are regarded as permanent residents in the institution and whose school residence is not legally in another district may be considered for aid.

The basis for determining the amount of aid shall be upon data for the preceding fiscal year. For each child in average daily attendance in the public school from an orphans' home the State Board of Education shall apportion One Hundred and Ten Dollars ($110.00).

To be eligible for aid under this Act, a school district shall submit a certified written application for aid

to the State Board of Education before September 1 of each year. Such application shall describe the institution in question and shall include a list of the pupils from such institution for the preceding school year, giving the grade, school, and the number of days attended by each pupil.''

SECTION 2. All laws and parts of laws in conflict herewith are hereby repealed.

APPROVED: January 27, 1965.

## ACT 11

AN ACT to Amend Section 73-427 of Arkansas Statutes, 1947, Annotated, to Extend to Light and Power Corporations Organized for the Purpose of Generating, Transmitting and Distributing Electric Power and Energy for Public Use Under the Laws of Any Other State or Territory, the Same Privilege of Domestication as that Now Held by Foreign Railroad or Pipeline Corporations.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. Section 73-427 of Arkansas Statutes, 1947, Annotated, is hereby amended to read as follows:

"73-427. Domestication of foreign railroad, pipe-line or electric light and power corporations required.—Before any railroad, pipeline, or light and power corporation organized for the purpose of generating,

78   ACTS OF ARKANSAS.   [ACT 26-27

## ACT 26

AN ACT to Provide That the Office of Municipal Judge of any Municipal Court Located in a County Having a Population of not Less Than 21,500 and not More Than 22,000 Inhabitants According to the Most Recent Federal Decennial Census, Shall be Voted Upon by the Qualified Electors of the Entire County; and for Other Purposes.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. The office of municipal judge of any municipal court located in any county of this State having a population of not less than 21,500 and not more than 22,000 inhabitants, according to the most recent Federal Decennial Census, shall hereafter be voted upon by the qualified electors of the entire county in which such court is located.

SECTION 2. All laws and parts of laws in conflict with this Act are hereby repealed.

APPROVED: February 3, 1965.

## ACT 27

AN ACT to Amend Section 2 of Act 384 of 1953, as Amended [Ark. Stats., 80-942]; to Authorize Revolving loans to School Districts to Purchase Equipment; and for Other Purposes.

ACT 27]   ACTS OF ARKANSAS.   79

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. That Section 2 of Act No. 384 of 1953, as amended, the same being Section 80-942 of the Arkansas Statutes (1960 Repl. Vol.), is hereby amended to read as follows:

"SECTION 2. Subject to the conditions and limitations contained in this act, any local school district may borrow, and the State Board of Education may lend, moneys in the Revolving Loan Fund for any of the following purposes, to-wit:

(a) funding of its legally issued and outstanding post-dated warrants;

(b) purchase of school busses;

(c) payment of premiums on insurance policies covering its school buildings, facilities and equipment in instances where the insurance coverage extends three (3) years or longer; and replacement of or payment of the district's pro rata part of the expense of employing professional appraisers as authorized by Act 351 of 1949, or other laws heretofore or hereafter enacted providing for the appraisal, or reappraisal, and assessment of property for ad valorem tax purposes.

(d) making major repairs and constructing additions to existing school buildings and facilities;

(e) purchase of surplus buildings, and equipment;

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. That Section 1 of Act No. 15 of the Acts of the General Assembly of the State of Arkansas of 1953, as amended, be and the same is hereby amended to read as follows:

"SECTION 1. That the salaries of the official Court Reporters of the 12th Chancery Circuit of Arkansas shall be Six Thousand Dollars ($6,000.00) each per annum, which salaries shall be paid as a part of the necessary Court expenses, said salaries being payable and retroactive to January 1, 1965."

SECTION 2. It is ascertained and determined by the General Assembly that the Judicial processes of the Courts in said district are unable to function properly without official Court Reporters; that Reporters cannot be employed under existing provisions for compensation therefor; that the proper functioning of said courts is necessary for the preservation of the public peace, health and safety; therefore, an emergency is hereby declared to exist and this Act shall take effect and be in full force from and after its passage and approval.

APPROVED: February 8, 1965.

## ACT 41

AN ACT to Amend Paragraph C-8 of Section 15 of Act 105 of 1939, as Amended, (Ark. Stats. (1947) Section 53-115, C-8); to Declare an Emergency; and for Other Purposes.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. Paragraph C-8 of Section 15 of Act 105 of 1939, as amended, the same being Arkansas Statutes (1947) Section 53-115, C-8, is hereby amended to read as follows:

"C-8. The formation of such a unit as herein provided and the operation of the unit under order of the Commission shall not be a violation of any statute of this State relating to trusts, monopolies, contracts or combinations in restraint of trade.

(a) The provisions of C-1 through C-8, inclusive, of this Section 15 shall be applicable to each pool, or any portion thereof, in the State of Arkansas, whether discovered before or after January 1, 1937."

SECTION 2. It has been found and is declared by the General Assembly of the State of Arkansas that the public and private interests in the prevention of waste of oil and gas, the protection of the correlative rights of all owners and the increased ultimate recovery of oil and/or gas by integration of all tracts and interests in an entire pool, or part thereof, in appropriate cases are applicable to all common sources of supply in the State of Arkansas, regardless of when

256   ACTS OF ARKANSAS.   [ACT 91

that this Act be given immediately effect, an emergency is hereby declared to exist, and this Act shall take effect and be in full force from and after its passage and approval.

APPROVED: February 18, 1965.

## ACT 91

AN ACT to Make it Unlawful for Any Person, Partnership, Company or Corporation Cutting Any Timber in This State to Leave Tree Tops, Tree Trunks or Tree Limbs in Any Navigable Stream, Drainage Ditch or Stream or Stream Bed of Any Improved Drainage Project; to Prescribe Penalties for Violations of This Act; and for Other Purposes.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. It is unlawful for any person, partnership, company or corporation cutting any timber or trees in this State to leave any tree tops, tree trunks, or tree limbs in any navigable stream, drainage ditch or stream or stream bed of any improved drainage project.

SECTION 2. Every person, partnership, company or corporation violating the provisions of this Act shall e guilty of a misdemeanor and upon conviction thereor shall be subject to a fine of not less than Twenty-ive Dollars ($25.00) nor more than Two Hundred Fifty

---

ACT 92]   ACTS OF ARKANSAS.   257

Dollars ($250.00) or imprisonment for not less than ten (10) days nor more than ninety (90) days, or both such fine and imprisonment, and each such violation shall constitute a separate offense.

SECTION 3. All laws and parts of laws in conflict with this Act are hereby repealed.

APPROVED: February 18, 1965.

## ACT 92

AN ACT to Bar Prosecution of an Offense After Acquittal or Conviction on the Merits of an Offense of the Same Character Committed in the Same Course of Conduct Against the United States or Another State or Territory Thereof.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. When a person has been either acquitted or convicted, on the merits, of an offense against the United States or against another State or Territory thereof, the acquittal or conviction is a bar to prosecution for an offense against this State, or any governmental subdivision thereof, when the two offenses were committed in the same course of conduct and are of the same character.

SECTION 2. For purposes of this act two offenses are of the same character when the elements which must be proved to obtain a conviction of one offense are not

450          ACTS OF ARKANSAS.          [ACT 149

such adjudication shall not affect other provisions hereof.

APPROVED: March 9, 1965.

ACT 149

AN ACT to Exempt Income Derived from Investments Made by Non-Profit Organizations, Either Foreign or Domestic, from Arkansas Income Tax, Where Such Income is for the Sole Purpose of Providing Pension and Annuity Benefits to Members of Such Non-Profit Organizations; and for Other Purposes.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. Income derived from investments made by non-profit organizations, whether or not such organization is organized or exists under the laws of this State, shall be exempt from Arkansas Income Tax where such income is for the sole purpose of providing pension and annuity benefits to members of such non-profit organizations.

SECTION 2. This Act shall apply to income as herein provided beginning January 1, 1965.

SECTION 3. It is hereby found and determined by the General Assembly that the current status of the Income Tax Law relating to non-profit organizations is

ACT 150]          ACTS OF ARKANSAS.          451

such as to raise a technical question as to the exemption of investment income of foreign and domestic non-profit organizations where such income is for the purpose of pension and annuity benefits for their members; and in order to attract foreign investment capital and to encourage pension and annuity plans for the benefit of residents of this State, and these things being found necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval.

APPROVED: March 9, 1965.

ACT 150

AN ACT to Recodify the Provisions of Act 124, Approved February 24, 1939, and Act 217, Approved March 20, 1945, and Act. 153, Approved February 23, 1951, Establishing the Contractors Licensing Board and Regulating the Practice of Contracting in the State of Arkansas; to Fix Maximum Salaries and Establish Qualifications for Employees of the Board and to Limit the Number of Employees to be Employed by the Board.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. For the purposes of this Act, a "contractor" is defined to be any person, firm, partnership,

112        ACTS OF ARKANSAS.        [ACT 233

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. There is hereby appropriated, to be payable from the State General Services Fund, for payment to the Regional Council on Mental Health Training and Research Program of the Southern Regional Education Board, for Arkansas' share of the cost of said program, for the biennial period ending June 30, 1967, the following:

| | Fiscal Years 1965-66 | 1966-67 |
|---|---|---|
| (1) Contribution to the Regional Council on Mental Health Training and Research of the Southern Regional Education Board | $8,000.00 | $8,000.00 |

SECTION 2. The State Comptroller shall be the disbursing officer of the appropriation provided in this Act.

SECTION 3. All laws and parts of laws in conflict herewith are hereby repealed.

APPROVED: March 19, 1965.

---

ACT 234]        ACTS OF ARKANSAS.        713

## ACT 234

AN ACT to Make an Appropriation for Personal Services and Operating Expenses of the Thomas C. McRae Memorial Sanitorium, for the Biennial Period Ending June 30, 1967; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. REGULAR SALARIES. There is hereby established for the Thomas C. McRae Memorial Sanitorium, for the 1965-67 biennium, the following maximum number of regular employees and the maximum annual salaries of such employees; and no greater salary than that established herein shall be paid to any employee of said department from appropriated funds of such department. Provided, that in determining the annual salaries of such employees, the administrative head of such agency shall take into consideration ability and length of service, and it is not the intention of the General Assembly that the maximum salaries be paid unless such qualifications are complied with, and then only within the limitations of the appropriations and funds available for such purpose.

| Item No. | Title | Maximum No. of Employees | Maximum Annual Salary Rate |
|---|---|---|---|
| (1) | Superintendent - Medical Director | 1 | $15,000.00 |

1092     ACTS OF ARKANSAS.     [ACT 331]

(10) Social Security & Retirement Matching ... 10,000.00   10,000.00

Total Amount Appropriated   122,000.00   122,000.00

APPROVED: March 19, 1965.

## ACT 331

AN ACT to Make an Appropriation for the Administration and Operation of the Arkansas State Highway Employees Retirement System for the Biennial Period Ending June 30, 1967; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. APPROPRIATIONS. There is hereby appropriated, to be payable from the Highway Employees Retirement Fund, for the payment of expenses of operation, refunds to withdrawing members, annuities to retired members and investment of accumulated funds, the following:

| | Fiscal Years | |
| | 1965-66 | 1966-67 |
|---|---|---|
| (1) For payment of operating expenses, refunds to | | |

---

ACT 332]     ACTS OF ARKANSAS.     1093

withdrawing members, annuities to retired members and investments   $4,000,000.00   $4,000,000.00

SECTION 2. TRANSFER PROVISION. Should any of the amount appropriated for the fiscal year ending June 30, 1966, be not used, such balance shall be brought forward and made available for the same purpose in the fiscal year ending June 30, 1967.

SECTION 3. REPEALING CLAUSE. All laws or parts of laws in conflict with this Act are hereby repealed.

APPROVED: March 19, 1965.

## ACT 332

AN ACT to Make an Appropriation for Personal Services and Operating Expenses of the Social Security and Retirement Division, State Comptroller's Office, for the Biennial Period Ending June 30, 1967; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. REGULAR SALARIES. There is hereby established for the Social Security and Retirement Division of the State Comptroller's Office, for the 1965-67 biennium, the following maximum number of



LAWAR
KFA
3625
.A2
1995
v.1
BK.6

ACTS OF
ARKANSAS
1995

3 5130 00079 1578

University of Arkansas Libraries

6730    ACTS OF ARKANSAS    [ACT 1353

produces a child or children and results in a court order directing the recipient of alimony to provide support of another person who is not a descendant by birth or adoption, which circumstances shall be considered the equivalent of remarriage."

SECTION 2. The provisions of this act shall apply to payments of alimony due after the effective date hereof.

SECTION 3. All provisions of this act of a general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 4. If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

SECTION 5. All laws and parts of laws in conflict with this act are hereby repealed.

/s/ Rep. Vess

BECAME LAW WITHOUT GOVERNOR'S SIGNATURE: April 19, 1995.

---

ACTS OF ARKANSAS    6731

ACT 1354

AN ACT to Create the Position of Case Coordinator for the Circuit and Chancery Judges of Phillips County; Declaring an Emergency; and for Other Purposes.

Subtitle

AN ACT to Create the Position of Case Coordinator for the Circuit and Chancery Judges of Phillips County; Declaring an Emergency.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. It is hereby created the position of Case Coordinator to serve the several circuit and chancery judges of Phillips County.

SECTION 2. All provisions of this act of a general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 3. If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

SECTION 4. All laws and parts of laws in conflict with this act are hereby repealed.

ACT 1354]

6732   ACTS OF ARKANSAS   [ACT 1355

SECTION 5. EMERGENCY. It is hereby found and determined by the General Assembly that the workload of the circuit and chancery judges in Phillips necessitates that they be provided a case coordinator and that this act so provides. Therefore, an emergency is hereby declared to exist and this act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

BECAME LAW WITHOUT GOVERNOR'S SIGNATURE: April 19, 1995.

ACT 1355

AN ACT to Provide for Retirement Benefits for Circuit Judges Who Have Served Continuously for at Least Sixteen (16) Years and Who Are Over Eighty (80) Years of Age; to Declare an Emergency; and for Other Purposes.

Subtitle

TO PROVIDE for Retirement Benefits for Circuit Judges Who Have Served For Sixteen (16) Years and Who Are Over Eighty (80) Years of Age.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1. Notwithstanding Arkansas Code

ACT 1355]   ACTS OF ARKANSAS   6733

§ 24-8-215 regarding the mandatory retirement under the Judicial Retirement System for any judge or justice upon reaching seventy (70) years of age or any other law to the contrary, any judge or justice covered under the Judicial Retirement System who served continuously for at least sixteen (16) years, who is at least eighty (80) years of age, who is not serving on the effective date of this act, and who is ineligible for retirement due to having served beyond the mandatory retirement age, shall be entitled to receive retirement benefits under the Judicial Retirement System. Retirements benefits under this act shall be retroactive to January 1, 1995 or, for judges or justices retiring after 1995, to January 1st of the year of retirement.

SECTION 2. All provisions of this act of general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 3. If any provisions of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provisions or application, and to this end the provisions of this act are declared to be severable.

SECTION 4. All laws and parts of laws in conflict with this act are hereby repealed.

SECTION 5. Emergency. It is hereby found and determined by the Eightieth General Assembly of the State of Arkansas that the service rendered

ACT 1356]    ACTS OF ARKANSAS    6735

General Assembly, to Vest in the Public Employees Retirement System.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1.  Arkansas Code § 24-3-201(a) is amended to read as follows:

"(a)(1)  Any member in named plan employment may retire with an annuity provided for in subsection (e) of this section upon his written application to the governing body of his named plan setting forth at what time, not less than thirty (30) days nor more than ninety (90) days subsequent to the execution and filing of his application, he desires to be retired.

(2)  At the time of his separation from employment and at the time so specified for his retirement, the member must have attained normal retirement age and must have five (5) or more years of credited service, except for members of the General Assembly who must have ten (10) or more years of credited service.

(3)  The member's annuity starting date shall be that date established by the provisions in each named plan, and he shall have a right to elect an option provided for in § 24-3-203."

SECTION 2.  Arkansas Code § 24-3-206(a)(1) is amended to read as follows:

"(1)  Except for members of the General Assembly who must have at least ten (10) years of credited service, the member has five (5) or more

---

734    ACTS OF ARKANSAS    [ACT 1355]

y circuit judges to the citizens and the State of Arkansas has not been adequately rewarded by the compensation provided to them, that certain circuit judges who chose not to retire at the mandatory retirement age will even be stripped of their retirement benefits; that this will create an inequity for all those ineligible judges and justices, and that the effective and efficient administration of justice for state government demands that this inequity be corrected immediately. Therefore, in order to correct this inequity, an emergency is hereby declared to exist, and this act being necessary for the immediate preservation of the public peace, health, and safety, shall be in full force and effect from and after its passage and approval.

BECAME LAW WITHOUT GOVERNOR'S SIGNATURE: April 19, 1995.

ACT 1356

AN ACT to Amend Various Sections of Title 24, Chapter 3, of the Arkansas Code of 1987, Annotated, to Reduce the Minimum Service Time to Five (5) Years for Members, Except Members of the General Assembly, to Vest Under the Public Employees Retirement System Beginning January 1, 1996; and for Other Purposes.

Subtitle

AN ACT to Reduce the Minimum Service to Five (5) Years for Members, Except Members of the

6740        ACTS OF ARKANSAS        [ACT 1356

during a two-year term to the General Assembly shall be credited with no more than one (1) year actual service.

(4) Employment as an elected public official other than Governor or an elected state constitutional officer or a member of the General Assembly shall be credited as service at two (2) times the regular rate for crediting service, except that at least five (5) years of actual service shall be required to meet the retirement eligibility requirements of §§ 24-3-201(a) and (b), 24-3-206(a), 24-3-207(a), and 24-3-208, and at least five (5) years of actual service shall be required to meet the eligibility requirements of §24-3-209.

(5) As used in this section, 'elected state constitutional officer' means the Lieutenant Governor, Attorney General, Secretary of State, State Auditor, State Treasurer, and Commissioner of State Lands."

SECTION 6.    The provisions of this act shall be effective July 1, 1997.

SECTION 7.    All provisions of this act of general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 8.    If any provisions of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provisions or

ACT 1357]        ACTS OF ARKANSAS        6741

application, and to this end the provisions of this act are declared to be severable.

SECTION 9.    All laws and parts of laws in conflict with this act are hereby repealed.

/s/ Snyder et al

BECAME LAW WITHOUT GOVERNOR'S SIGNATURE: April 19, 1995.

ACT 1357

AN ACT to Require That the Department of Education Shall Begin Repayment of Both Principal and Interest by July 1, 1997, on the Loan to Establish a Statewide Computer Network; and for Other Purposes.

Subtitle

REQUIRING THE Department of Education to Begin Repayment of Both Principal and Interest by July 1, 1997, on the Loan to Establish a Statewide Computer Network.

Be It Enacted by the General Assembly of the State of Arkansas:

SECTION 1.    Section 1 of uncodified Act 1034 of 1991 is hereby amended to read as follows:

KFA
3625
.A2
1995
v.2
BK.1

ACTS OF
ARKANSAS
1995

University of Arkansas, Fayetteville

3 5130 00079 1511

# ACTS OF ARKANSAS

OF THE
FIRST EXTRAORDINARY SESSION
OF THE
EIGHTIETH GENERAL ASSEMBLY

# INITIATED ACT NUMBER ONE

INITIATED BY PETITION
OF THE
PEOPLE

# CONSTITUTIONAL AMENDMENTS 74 AND

REFERRED BY THE
EIGHTIETH GENERAL ASSEMBLY

# PROPOSED CONSTITUTIONAL AMENDMENTS

REFERRED BY THE
EIGHTY-FIRST GENERAL ASSEMBLY

# HOUSE AND SENATE RESOLUTIONS

OF THE
EIGHTY-FIRST GENERAL ASSEMBLY

OF THE

# STATE OF ARKANSAS

## VOLUME II

### BOOK I

# NOTICE

This office and its proofreaders have found that there are typographical errors in the original copies of the Acts of 1995.

However, it is mandatory that the Acts be reproduced exactly as they became law. Therefore, corrections were not made.

**SHARON PRIEST**
*Secretary of State*

v

## CERTIFICATE

I, **Sharon Priest**, Secretary of State, State of Arkansas, do hereby certify that the following Acts totaling sixteen (16) are contained in the Acts of Arkansas of the Eightieth General Assembly of the State of Arkansas, passed and approved at the Extraordinary Session, are copies of the originals of the same now on file in the Office of the Secretary of State.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of the Office of Secretary of State at the City of Little Rock, Arkansas, this the 10th day of July, 1997.

**SHARON PRIEST**
**SECRETARY OF STATE**



iv

# FIRST

# EXTRAORDINARY

# SESSION

Passed at the first Extraordinary Session held at the Capitol in the City of Little Rock, Arkansas. The First Extraordinary Session convening on the 17th day of October, 1995 and adjourning on the 20th day of October, 1995.

IINCLUDING THE GENERAL AND APPROPRIATION
ACTS OF THE FIRST
EXTRAORDINARY SESSION OF 1995

xvii

## ACT 1

AN ACT TO CALL A CONSTITUTIONAL CON-
VENTION WITH THE AUTHORITY AND
RESPONSIBILITY TO REVISE THE CON-
STITUTION OF THE STATE OF ARKANSAS;
TO PRESCRIBE THE METHOD OF SELECT-
ING DELEGATES TO THE CONVENTION;
TO PRESCRIBE THE METHODS FOR RATI-
FYING THE CALL AND FOR SUBMISSION
OF PROPOSED REVISIONS OF THE CON-
STITUTION TO A VOTE OF THE PEOPLE;
DECLARING AN EMERGENCY; AND FOR
OTHER PURPOSES.

Subtitle

*TO CALL A CONSTITUTIONAL CONVENTION.*

*BE IT ENACTED BY THE GENERAL ASSEMBLY
OF THE STATE OF ARKANSAS:*

SECTION 1. FINDINGS AND DETERMINA-
TIONS. It is hereby found and determined by the
General Assembly that many of the provisions of
the Arkansas Constitution of 1874, as amended,
are not reasonable or appropriate at the present
time and do not reflect the needs of a modern and
vital state government and should be revised; and
that the amendment process is not sufficient to
effect the necessary revisions. When the processes
of free government are to be modified, the people
have a right to act, and this right can be constitu-
tionally exercised by means of legislative action of
the General Assembly and a vote of the people in
providing by law for the call of a constitutional con-

14          ACTS OF ARKANSAS          [ACT 2

## ACT 2

AN ACT TO MAKE AN APPROPRIATION FOR PERSONAL SERVICES AND EXPENSES TO DEFRAY THE COSTS OF THE ARKANSAS CONSTITUTIONAL CONVENTION FOR THE 21ST CENTURY; AND FOR OTHER PURPOSES.

### Subtitle

AN ACT TO MAKE AN APPROPRIATION FOR THE ARKANSAS CONSTITUTIONAL CONVENTION FOR THE 21ST CENTURY.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. REGULAR SALARIES. There is hereby established for the Arkansas Constitutional Convention for the 21st Century the following maximum number of regular employees as set out in this section and whose salaries shall not exceed the maximum amounts hereinafter set forth. No greater salary than that established herein shall be paid to any employee of the Convention from appropriated funds herein, provided that in determining the salaries of such employees, consideration shall be given to ability and capacity of the employee to perform the job for which employed. It is not the intention of the General Assembly that the maximum salary be paid unless so determined by the Convention, and then only within the limitations of the appropriations and funds available for such purposes.

ACT 2]          ACTS OF ARKANSAS          15

| Item Class | | Maximum No. of | Maximum Annual Salary Rate Fiscal Years | |
| No. Code Title | | Employees | 1997-98 | 1998-99 |
| (1) Secretary/Executive Officer | | 1 | $ 865 | $45,000 |
| Maximum Number of Employees | | 1 | | |

SECTION 2. APPROPRIATIONS. There is hereby appropriated, effective upon passage and approval of this Act, to the Arkansas Constitutional Convention for the 21st Century to be payable from the State Central Services Fund, for personal services and expenses necessary to defray the costs of the Arkansas Constitutional Convention for the 21st Century, and for paying expenses of delegates thereof as authorized by law, the following:

| Item | | Maximum Annual Salary Rate Fiscal Years | |
| No. Title | | 1997-98 | 1998-99 |
| (01) REGULAR SALARIES | | | $   7,785 |
| (02) PERSONAL SERVICES MATCHING | | | 2,273 |
| (03) OPERATIONAL EXPENSES | | | 800,000 |
| (04) TRANSCRIPTION EXPENSES | | | 30,000 |
| (05) PRINTING/PUBLISHING EXPENSES | | | 259,942 |
| TOTAL AMOUNT APPROPRIATED | | | $ 1,100,000 |

SECTION 3. The Secretary of the Arkansas Constitutional Convention for the 21st Century shall be the disbursing officer for all payments of the Convention. Such authorized expenditures shall be disbursed from funds appropriated herein.

SECTION 4. Any savings made in any line item as provided for in Section 2 of this Act may, upon request by the Secretary of the Convention and upon approval of the Chief Fiscal Officer of the State, be transferred to any line item as provided for in Section 2 of this Act.

SECTION 5. CODE. All provisions of this Act

of a general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 6. SEVERABILITY. If any provision of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

SECTION 7. GENERAL REPEALER. All laws and parts of laws in conflict with this Act are hereby repealed.

SECTION 8. EMERGENCY CLAUSE. It is hereby found and determined by the Eightieth General Assembly meeting in First Extraordinary Session, that legislation has been proposed to call a Constitutional Convention with the authority and responsibility to revise the Constitution of the State of Arkansas; that financial provisions must be made to cover the expenses of the Arkansas Constitutional Convention for the 21st Century; and that the effectiveness of this Act upon its passage and approval is essential to the operation of the Arkansas Constitutional Convention for the 21st Century for which the appropriations in this Act are provided, and that a delay in the effective date of this Act could work irreparable harm upon the proper administration and provision of essential governmental programs. Therefore, an emergency is hereby declared to exist and this Act being nec-

essary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

APPROVED: 10-19-95

## ACT 3

AN ACT TO MAKE AN APPROPRIATION FOR PERSONAL SERVICES AND OPERATING EXPENSES FOR THE ARKANSAS SENATE WHICH SHALL BE SUPPLEMENTAL AND IN ADDITIONAL TO THOSE FUNDS APPROPRIATED BY ACT 2 OF 1995; AND FOR OTHER PURPOSES.

Subtitle

AN ACT FOR THE ARKANSAS SENATE SUP-PLEMENTAL APPROPRIATION."

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. APPROPRIATIONS. There is hereby appropriated, to the Arkansas Senate, to be payable from the Constitutional Officers Fund, for personal services and operating expenses of the Arkansas Senate which shall be supplemental and in addition to those funds appropriated in Section 1 of Act 2 of 1995, for the remainder of the biennial period ending June 30, 1997, the following:

20     ACTS OF ARKANSAS                                              [ACT 4

ACT 4

AN ACT TO MAKE AN APPROPRIATION FOR PERSONAL SERVICES AND OPERATING EXPENSES FOR THE ARKANSAS HOUSE OF REPRESENTATIVES WHICH SHALL BE SUPPLEMENTAL AND IN ADDITION TO THOSE FUNDS APPROPRIATED BY ACT 1 OF 1995; AND FOR OTHER PUR-POSES.

Subtitle

AN ACT FOR THE ARKANSAS HOUSE OF REP-RESENTATIVES SUPPLEMENTAL APPRO-PRIATION.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. APPROPRIATIONS. There is hereby appropriated, to the Arkansas House of Representatives, to be payable from the Constitu-tional Officers Fund, for personal services and oper-ating expenses of the Arkansas House of Repre-sentatives which shall be supplemental and in addition to those funds appropriated in Section 1 of Act 1 of 1995, for the remainder of the biennial period ending June 30, 1997, the following:

(1) Personal Services and Operating Expenses . . . . . . . . . . . . . . . $200,000.00.

SECTION 2. COMPLIANCE WITH OTHER LAWS. Disbursement of funds authorized by this Act shall be limited to the appropriation for such agency and funds made available by law for the support of such appropriations; and the restrictions of the State Purchasing Law, the General Account-ing and Budgetary Procedures Law, the Revenue Stabilization Law, the Regular Salary Procedures and Restrictions Act, or their successors, and other fiscal control laws of this State, where applicable, and regulations promulgated by the Department of Finance and Administration, as authorized by law, shall be strictly complied with in disbursement of said funds.

SECTION 3. LEGISLATIVE INTENT. It i the intent of the General Assembly that any funds disbursed under the authority of the appropria-tions contained in this Act shall be in compliance with the stated reasons for which this Act was adopted, as evidenced by the Agency Requests, Executive Recommendations and Legislative Rec-ommendations contained in the budget manuals prepared by the Department of Finance and Administration, letters, or summarized oral testi-mony in the official minutes of the Arkansas Leg-islative Council or Joint Budget Committee which relate to its passage and adoption.

SECTION 4. CODE. All provisions of this Act of a general and permanent nature are amenda-tory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 5. SEVERABILITY. If any provi-sion of this Act or the application thereof to any person or circumstance is held invalid, such inva-lidity shall not affect other provisions or appli-cations of the Act which can be given effect with-

ACT 4]                    ACTS OF ARKANSAS                     21

22    ACTS OF ARKANSAS    [ACT 4

out the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

SECTION 6.  GENERAL REPEALER.  All laws and parts of laws in conflict with this Act are hereby repealed.

SECTION 7.  EMERGENCY CLAUSE. It is hereby found and determined by the Eightieth General Assembly meeting in the First Extraordinary Session, that funds provided by the General Assembly for the operations of the Arkansas House of Representatives are, due to unforeseen circumstances, insufficient for the Arkansas House of Representatives to continue to provide essential governmental services; that the provisions of this act will provide the necessary monies for the Arkansas House of Representatives to continue such services; and that a delay in the effective date of this Act could work irreparable harm upon the proper administration and provision of essential governmental programs. Therefore, an emergency is hereby declared to exist and this Act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect from and after the date of its passage and approval.

/s/ Joint Budge Committee

APPROVED: 10-19-95

---

23    ACTS OF ARKANSAS

ACT 5

AN ACT TO AUTHORIZE THE ISSUANCE OF NOT TO EXCEED THIRTY MILLION DOLLARS OF STATE WATER RESOURCES DEVELOPMENT GENERAL OBLIGATION BONDS DURING THE 1996-1997 FISCAL BIENNIUM PURSUANT TO THE ARKANSAS WATER RESOURCES DEVELOPMENT ACT OF 1981 (CODIFIED AS ARKANSAS CODE OF 1987 ANNOTATED SECTIONS 15-22-601 THROUGH 15-22-622); PRESCRIBING OTHER MATTERS RELATED THERETO; DECLARING AN EMERGENCY; AND FOR OTHER PURPOSES.

Subtitle

TO AUTHORIZE THE ISSUANCE OF ADDITIONAL STATE WATER RESOURCES DEVELOPMENT GENERAL OBLIGATIONS BONDS."

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1.  The General Assembly finds:

(a) that the Arkansas Water Resources Development Act of 1981 (codified as Arkansas Code of 1987 Annotated Sections 15-22-601 through 622) (the "1981 Act") authorized the Arkansas Soil and Water Conservation Commission (the "Commission") to issue on behalf of the State of Arkansas the State Water Resources Development General Obligation Bonds (the "Bonds") in a total principal amount of not exceeding one hundred million dollars ($100,000,000), as approved by the voters of

## ACT 6

AN ACT TO ASSIST IN DEFRAYING THE COST OF A MULTI-PURPOSE CIVIC CENTER IN SEBASTIAN COUNTY; AND FOR OTHER PURPOSES.

### Subtitle

AN ACT TO ASSIST IN DEFRAYING THE COST OF A MULTI-PURPOSE CIVIC CENTER IN SEBASTIAN COUNTY.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. Effective January 1, 1996, upon certification that monies have been appropriated by local governments, set aside and committed by an institution of higher education, or received by private donations, the Chief Fiscal Officer of the State may release funds appropriated for defraying the cost of a multi-purpose civic center in Sebastian County from time to time on a dollar for dollar basis to the entities enumerated herein, to be used for the purposes described herein, provided that a cooperative agreement has been entered into by a local government entity and an institution of higher education located in Sebastian County.

SECTION 2. Of the appropriation provided to defray the cost of a multi-purpose civic center in Sebastian County, one-half shall be in addition to those projects enumerated in Section 3(A) of Act 1316 of 1995. The remaining funds shall be in addition to those projects enumerated in Section 3(B) of Act 1316 of 1995.

SECTION 3. LEGISLATIVE INTENT. It is the intent of the General Assembly that any funds disbursed under the authority of the appropriations contained in this Act shall be in compliance with the stated reasons for which this Act was adopted, as evidenced by the Agency Requests, Executive Recommendations and Legislative Recommendations contained in the budget manuals prepared by the Department of Finance and Administration, letters, or summarized oral testimony in the official minutes of the Arkansas Legislative Council or Joint Budget Committee which relate to its passage and adoption.

SECTION 4. CODE. All provisions of this Act of a general and permanent nature are amendatory to the Arkansas Code of 1987 Annotated and the Arkansas Code Revision Commission shall incorporate the same in the Code.

SECTION 5. SEVERABILITY. If any provision of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

SECTION 6. GENERAL REPEALER. All laws and parts of laws in conflict with this Act are hereby repealed.

SECTION 7. EMERGENCY CLAUSE. It is hereby found and determined by the Eightieth General Assembly meeting in its First Extraordinary

28        ACTS OF ARKANSAS        [ACT 7

Session, that the Constitution of the State of Arkansas prohibits the appropriation of funds for more than a two (2) year period; that the effectiveness of this Act on passage and approval is essential to the operation of the agency for which the appropriations in this Act are provided, and that in the event of an extension of the Regular Session, the delay in the effective date of this Act beyond passage and approval could work irreparable harm upon the proper administration and provision of essential governmental programs. Therefore, an emergency is hereby declared to exist and this Act being necessary for the immediate preservation of the public peace, health and safety shall be in full force and effect upon passage and approval.

*/s/ Joint Budget Committee*

APPROVED: 10-19-95

_____

ACT 7

AN ACT TO AMEND ARKANSAS CODE 7-5-101 RELATING TO THE AUTHORITY OF THE COUNTY BOARD OF ELECTION COMMISSIONERS TO DESIGNATE POLLING PLACES IN ELECTION PRECINCTS; AND FOR OTHER PURPOSES.

Subtitle

TO AMEND ARKANSAS CODE 7-5-101 RELATING TO THE DESIGNATION OF POLLING

---

ACT 7]        ACTS OF ARKANSAS        29

PLACES IN ELECTION PRECINCTS.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1.  Arkansas Code 7-5-101 is amended to read as follows:

"7-5-101. Precinct boundaries and voting places - Establishment and alteration.

(a)  The county board of election commissioners are empowered to alter the boundaries of existing election precincts and to establish new ones when, in their judgment, it may be necessary. The county board of election commissioners shall fix a voting place for each election precinct. The commissioners may combine voting places for two or more precincts, when, in their judgment, it may be necessary. In changing the boundaries of existing precincts, or in creating new ones, the commissioners shall arrange them so that all qualified voters residing therein may vote on the same day. The commissioners shall not have the power to change the boundaries of existing precincts, to create any new precinct, or to change the voting place in any precinct, within thirty (30) days of any election, but all elections shall be held at the places, and within the boundaries, as they existed thirty (30) days before the date of the election.

(b)  All voting places shall be fixed at well-known points in the several precincts and easily accessible to all electors entitled to vote therein.

(c)(1)  The action of the commissioners in changing the voting place in any precinct, in alter-

## ACT 8

AN ACT TO ALLOW CERTAIN CITIES WITH THE CITY MANAGER FORM OF GOVERN-MENT TO IMPLEMENT A REORGANIZA-TION PLAN AT A SPECIAL ELECTION; AND FOR OTHER PURPOSES.

### Subtitle

AN ACT TO ALLOW CERTAIN CITIES WITH THE CITY MANAGER FORM OF GOVERN-MENT TO IMPLEMENT A REORGANIZA-TION PLAN AT A SPECIAL ELECTION.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. (a) This act applies only to a city with the city manager form of government in which the Arkansas city is divided by a street state line from an incorporated city or town in an adjoining state and the city or town in the adjoining state is of greater population that the Arkansas city or town meeting the following criteria:

(1) a special election was held approving the reorganization of the city under the option provid-ing for the election of a mayor at-large and mem-bers of the board of directors from wards; and

(2) the election approving the option was held after the 1992 general election and before the 1994 general election but was not implemented at the 1994 general election.

SECTION 2. (a) A city meeting the criteria of

Section 1 of this act shall be divided into six (6) wards by the county board of election commission-ers within ten (10) days after the effective date of this act. Each ward shall be composed of contigu-ous territory and of substantially equal population. The county board of election commissioners shall designate each ward by number.

(b)(1) Within five (5) days after the county board of election commissioners divides the city into wards, the mayor shall, by proclamation, call a special election to be held not less than sixty (60) days nor more than ninety (90) days after the date of the proclamation.

(2) The proclamation shall be published at length in a legal newspaper having general circu-lation in the city, and notice of the election shall be published in a legal newspaper having general cir-culation in the city once a week for two (2) weeks, the first publication to be not less than forty (40) days before the date set for the election. No other notice of the election is required.

(c)(1) The name of each candidate for mayor shall be supported by a petition, signed by at least fifty (50) qualified electors of the municipality, requesting the candidacy of the candidate. The name of each candidate for director shall be sup-ported by a petition, signed by at least fifty (50) qualified electors of the ward, requesting the can-didacy of the candidate. The petition supporting the candidacy of each candidate to be voted upon at the special election shall be filed with the city clerk or recorder not less than forty (40) days before the election by twelve o'clock noon.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:

SECTION 1.   Subsection (a) of A.C.A. §22-3-1210 is hereby amended to read as follows:

(a) The principal of and interest on the certificates of indebtedness issued under this subchapter shall be secured, except as stated in subsection (c)(1) herein below, by a lien on and pledge of:

SECTION 2.   Subsection (c) of A.C.A. §22-3-1210 is hereby amended to read as follows:

(c)(1) Monies described in subsection (a)(2) above are declared to be cash funds restricted in their use and dedicated and are to be used solely as authorized in A.C.A. §15-5-213.  The cash funds when received by the Department of Correction shall not be deposited in or deemed to be a part of the State Treasury for purposes of Arkansas Constitution, Article 5, §29; Arkansas Constitution, Article 16, §12; Arkansas Constitution, Amendment 20, or any other constitutional or statutory provision related thereto.  The Department of Correction shall pay such cash funds to the Arkansas Development Finance Authority for deposit in the Correction Facilities Privatization Account of the Correction Facilities Construction Fund for the purposes authorized by A.C.A. §15-5-213.  The cash funds described in this subsection shall not be subject to appropriation to the extent required for debt service.

Commencing on the first day of the month next succeeding the issuance of certificates of indebted-

ness under this subchapter but not before July 1, 1983, and so long as any certificates are outstanding under this subchapter, the pledged revenues, except as provided herein, shall be deposited into the State Treasury as and when received by the Department of Correction, by the State Building Services, by state-supported institutions of higher education, or by any other state agency, as the case may be, to the credit of a fund to be designated the "Public Facilities Debt Service Fund".

(2) So long as any certificates of indebtedness are outstanding under this subchapter all moneys in the Public Facilities Debt Service Fund shall be used solely for payment and redemption of the outstanding 1977 Bonds and the 1979 Bonds, as authorized in this subchapter, for the payment of the principal and interest on the certificates of indebtedness as authorized in this subchapter, for transfer of such amounts designated in Section 1210 Subsection (a) of this subchapter from time to time as deemed necessary by the Chief Fiscal Officer of the State to the Correction Facilities Privatization Account of the Correction Facilities Construction Fund established in A.C.A. §15-5-213 and for the transfer of surplus moneys as defined in the authorizing resolution in the State Treasury for credit to the designated Department of Correction funds, in accordance with the provisions of this subchapter."

SECTION 3.   Subsection (c) of A.C.A. §15-5-213 is hereby amended to add a new subsection to read as follows:

(c1)  There is created within the Correction Facilities Construction Fund an account entitled the Correction Facilities Privatization Account and

42    ACTS OF ARKANSAS    [ACT 10

that the provisions of this Act are of critical importance to the safety and well being of the people of the State of Arkansas. Therefore, an emergency is hereby declared to exist, and this Act being necessary for the immediate preservation of the public peace, health, and safety shall be in full force and effect from and after its passage and approval.

/s/ Russ

APPROVED: 10-19-95

ACT 10

AN ACT TO AMEND VARIOUS SECTIONS OF THE ARKANSAS CODE RELATING TO THE TEN SUBJECT MATTER INTERIM COMMITTEES OF THE HOUSE OF REPRESENTATIVES AND OF THE SENATE; TO AMEND VARIOUS SECTIONS OF THE ARKANSAS CODE TO CLARIFY THE SOURCE OF PAYMENT OF PER DIEM AND MILAGE TO FIRST ALTERNATE MEMBERS; AND FOR OTHER PURPOSES.

Subtitle

RELATING TO THE TEN SUBJECT MATTER INTERIM COMMITTEE OF THE HOUSE OF REPRESENTATIVES AND OF THE SENATE.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:

ACT 10]    ACTS OF ARKANSAS    43

SECTION 1. Arkansas Code 10-3-203(3)(A), first paragraph, is amended to read as follows:

(3)(A) The following ten (10) subject matter interim committees of each house of the General Assembly, with the House committees to each consist of the twenty (20) members of the House of Representatives and the Senate committees to each consist of the seven (7) members of the Senate who compose the respective standing committees of the House and Senate having comparable subject matter jurisdiction, plus such other non-voting members as may be selected pursuant to rules of the House of Representatives and the Senate who shall be entitled to per diem and mileage for attending meetings of the committees. The respective House and Senate committees may meet separately or the House and Senate committees of comparable subject matter jurisdiction may meet jointly.

SECTION 2. Arkansas Code 10-3-203(3)(B) and (C) are amended to read as follows:

"(B) Members of the ten (10) interim House committees and the ten (10) interim Senate committees established in this subsection may also serve as members of the Legislative Council or of the Legislative Joint Auditing Committee.

(C) Any member of the House of Representatives who sponsors a proposal or resolution providing for a study which is referred to one (1) of the ten (10) House interim committees and any member of the Senate who sponsors a proposal or resolution providing for a study which is referred to one of the ten (10) Senate interim committees may

ACT 11]          ACTS OF ARKANSAS          59

THE APPOINTMENT OF ADDITIONAL COURT OF APPEALS JUDGES FROM THE STATE AT LARGE; AND FOR OTHER PURPOSES.

Subtitle

TO PROVIDE FOR THE APPOINTMENT OF ADDITIONAL COURT OF APPEALS JUDGES FROM THE STATE AT LARGE.

*BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:*

SECTION 1. Arkansas Code 16-12-101 is amended to read as follows:

16-12-101. Creation of court and apportionment board - Composition - Establishment of districts.

(a) There is created, pursuant to Arkansas Constitution, Amendment 58, the Arkansas Court of Appeals, to be composed of six (6) members until January 1, 1996.

(b) On or after January 1, 1996, the Court of Appeals shall be composed of nine (9) judges. On or after January 1, 1997, the Court of Appeals shall be composed of twelve (12) judges. The terms of office of the six (6) Court of Appeals judges currently holding office shall not be affected by this act.

(c)(1) Three additional judgeships created by subsection (b) of this section shall be effective on and after January 1, 1996 and three shall be effective on or after January 1, 1997. The Governor

---

58          ACTS OF ARKANSAS          [ACT 11

of this act are declared to be severable.

SECTION 23. All laws and parts of laws in conflict with this act are hereby repealed.

SECTION 24. EMERGENCY. It is hereby found and determined by the General Assembly that the current law relating to the operation of interim committees of the General Assembly unduly restricts the interim work of the General Assembly by authorizing committees to meet only as joint committees of the House of Representatives and the Senate; that in order to enable the Senate and House of Representatives to efficiently and effectively perform their interim duties, it is necessary that the interim committees of each house be authorized to meet either jointly or separately and that this act should be given effect immediately to accomplish this purpose. Therefore, an emergency is hereby declared to exist and this act being necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

/s/ Bobby Hogue, et al.

APPROVED: 10-23-95

ACT 11

AN ACT TO AMEND VARIOUS SECTIONS OF THE ARKANSAS CODE TO PROVIDE FOR

**FILED**

JAN - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Robert S. Szlemko
2,2 *No. Maple*
*Harrison, Arkansas 72601*

Plaintiff

v.

JUDGE GORDON WEBB
of BOONE COUNTY CIRCUIT COURT
STATE OF ARKANSAS

DEFENDANT

CASE NUMBER  1:07CV00009

JUDGE: Royce C. Lamberth

DECK TYPE: Civil Rights (non-employm

DATE STAMP: 01/04/2007

*JURY ACTION*

TRIAL BY JURY
DEMANDED

---

### JURISDICTIONAL CHALLENGE

---

#### Affidavit

We, Robert S. Szlemko and Jacob-Franz: Dyck, are competent to testify and make

this affidavit as a follower of the Messiah, In the laws of the Almighty Supreme

Creator, first and foremost and the laws of Man when they are not in conflict

(Leviticus 18:3,4). Pursuant to Matthew 5:33-37 and James 5:12 [C.I.R. v. Ferguson

USCA 90-1430], let our yeas be yea and our nays nay, as supported by your Federal

law 97-280, 96 Stat. 1211.  We have personal knowledge of the matters stated herein

and hereby asseverate understanding the liabilities presented in your <u>Briscoe v.</u>

<u>Lahue 46 U.S. 325.</u>

1

COMES NOW Robert Szlemko denying and challenging the jurisdiction of the above-names court over the subject matter in the above-entitled cause, for the reasons explained in the following memorandum.

## MEMORANDUM OF LAW

The following jurisdictional challenge was rejected by the Arkansas Appellate Court. My rights were violated in the trial, as were my choices of sexual stimulation. I grew up in Europe and have a wider range of preferences. There were no sexually illustrated or pornographic pictures involved. The interpretations of the Northern Arkansas Police were wrong and invasive concerning my private choices. I neither distributed nor sold anything the police alleged I did. Look into this challenge and please give my rights to privacy paramount consideration.

### I. The Nature of subject Matter Jurisdiction.

The jurisdiction of the court over subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts," Sec. 18, p.25. A court cannot proceed with a trial or make a judgment without such jurisdiction existing.

> It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time. Matter of Green, 313 S.E. 2d 193 (N.C. App. 1984).

Subject matter jurisdiction cannot be conferred by waiver or consent, and may be raised at any time. Rodriques v. State, 441 So.2d 1129 (Fla. App. 1984). The subject matter jurisdiction of a criminal case is related to the cause of action in general, and more specifically to the alleged crime or offense, which creates the action.

1

The subject-matter of a criminal offense is the crime itself.
Subject-matter in its broadest sense means the cause; the object;
the thing in dispute. Stillwell v. Markham, 10 P.2d 15, 16 135
Kan. 206 (1932).

An indictment or complaint in a criminal case is the means by which a court

obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the

accused stands trial." State v. Chatmon, 671 P.2d 531, 538 (Kan. 1983). The complaint

is the foundation of the jurisdiction of the magistrate or court. Thus if these charging

instruments are invalid, there is a lack of subject matter jurisdiction.

Without a formal and sufficient indictment or information, a
court does not acquire subject matter jurisdiction and thus an
accused may not be punished for a crime. Honomichl v. State,
333 N.W.2d 797, 798 (S.D. 1983).

A formal accusation is essential for every trial of a crime.
Without it the court acquires no jurisdiction to proceed, even
with the consent of the parties, and where the indictment or
information is invalid the court is without jurisdiction. Ex
parte Carlson, 186 N.W. 722, 725, 176 Wis. 538 (1922).

Without a valid complaint any judgment or sentence rendered is "void ab

initio" Ralph v. Police of El Cerrito, 190 P.2d 632, 634, 84 Cal. App.2d 257 (1948).

Jurisdiction to try and punish for a crime cannot be acquired by
the mere assertion of it, or invoked otherwise than in the mode
prescribed by law, and if it is not so acquired or invoked any
judgment is a nullity. 22 C.J.S., "Criminal Law," Sec. 167, p. 202.

The charging instrument must not only be in the particular mode or form

prescribed by the constitution and statute to be valid, but it also must contain reference to

the valid laws. Without a valid law, the charging instrument is insufficient and no subject

matter jurisdiction exists for the matter to be tried.

Where an information charges no crime, the court lacks
jurisdiction to try the accused. People v. Hardiman, 347 N.W.
2d 460, 462, 132 Mich. App. 382 (1984).

[W]hether or not the complaint charges an offense is a
jurisdictional matter. Ex parte Carlson, 186 N.W. 722, 725,
176 Wis. 538 (1922).

An invalid law charged against one in a criminal matter also negates subject

matter jurisdiction by the sheer fact that it fails to create a cause of action. "Subject

matter is the thing in controversy." Holmes v. Mason, 115 N.W. 770. 80 Neb. 454, citing

Black's Law Dictionary. Without a valid law, there is no issue or controversy for a court

to decide upon. Thus, where a law does not exist or does not constitutionally exist, or

where the law is invalid, void or unconstitutional, there is no subject matter jurisdiction to

try one for an offense alleged under such a law.

If a criminal statute is unconstitutional, the court lacks
subject-matter jurisdiction and cannot proceed to try the case.
22 C.J.S. "Criminal Law," Sec 157, p. 189; citing People v.
Katrinak, 185 Cal. Rptr. 869, 136 Cal. App.3d 145 (1982).

Where the offense charged does not exist, the trial court lacks
jurisdiction. State v. Christensen, 329, N.W. 2d 382, 383, 110
Wis. 2d 538 (1983).

Not all statutes create a criminal offense. Thus where a man was charged with "a

statute which does not create a criminal offense," such person was never legally charged

with any crime or lawfully convicted because the trial court did not have "jurisdiction of

the subject matter," State ex rel. Hansen v. Rigg, 258 Minn. 388, 104 N.W.2d 553 (1960).

There must be a valid law in order for subject matter to exist.

In the case where a man was convicted of violating certain sections of some laws,

he later claimed that the laws were unconstitutional which deprived the county court of

jurisdiction to try him for those offenses. The Supreme Court of Oregon held:

If these sections are unconstitutional, the law is void and an
offense created by them is not a crime and a conviction under

3

them cannot be a legal cause of imprisonment, for no court can
acquire jurisdiction to try a person for acts which are made
criminal only by an unconstitutional law. <u>Kelly v. Meyers</u>, 263
Pac. 903, 905 (Ore. 1928).

Without a valid law there can be no crime charged under that law, and where
there is no crime or offense there is no controversy or cause of action, and without a
cause of action there can be no subject matter jurisdiction to try a person accused of
violating said law. The court then has no power or right to hear and decide a particular
case involving such invalid or nonexistent laws.

These authorities and others make it clear that if there are no valid laws charged
against a person, there is nothing that can be deemed a crime, and without a crime there is
no subject matter jurisdiction. Further, invalid or unlawful laws make the complaint
fatally defective and insufficient, and without a valid complaint there is a lack of subject
matter jurisdiction.

The accused asserts that the laws charged against him are not valid, or do not
constitutionally exist as they do not conform to certain constitutional prerequisites, and
thus are no laws at all, which prevents subject matter jurisdiction to the above-named
court.

The complaints in question allege that the Accused has committed several crimes
by the violation of certain laws, which are listed in said complaints, to wit:

Various sections of Arkansas Code Annotated, 5-27-602.

I have been informed that these laws or statutes used in the complaints against
myself are located in and derived from the collection of books entitled "A.C.A.". Upon
looking up these laws in this publication, I realized that they do not adhere to several
constitutional provisions of the Arkansas Constitution.

4

By Article V of the Constitution of Arkansas (1874), all lawmaking for the State is vested in the Legislature of Arkansas. This Article also prescribes certain forms, modes and procedures that must be followed in order for a valid law to exist under the Constitution. It is fundamental that nothing can be a law that is not enacted by the Legislature prescribed in the Constitution, and which fails to conform to the Constitutional forms, prerequisites or prohibitions. These are the grounds for challenging the subject matter jurisdiction of this court, since the validity of a law on a complaint or indictment goes to the jurisdiction of a court. The following explains in authoritative detail why the laws cited in the complaints against the Accused are not constitutionally valid laws.

## II. By Constitutional Mandate, all Laws Must Have an Enacting Clause.

One of the forms that all laws are required to follow by the Constitution of Arkansas (1874) is that they contain an enacting style or clause. This provision is stated as follows:

> Article V, Section 19. The style of the laws of this state shall be, *"Be it enacted by the General Assembly of the State of Arkansas."*

None of these laws cited in the complaints against the Accused, as found in the "A.C.A.," 1991, contain any enacting clauses.

The constitutional provision, which prescribes an enacting clause for all laws, is not directory, but is mandatory. This provision is to be strictly adhered to as asserted by the Supreme Court of Tennessee.

> The provision we are here called upon to construe is in plain and unambiguous words. The meaning of it is clear and undisputable, and no ground for construction can be found. The language is: "The style of the laws of this state **shall** be. . ." The word

5

"shall" as used here, is equivalent to "must." We know of no case in which a
provision of the Constitution thus expressed has
been held to be a directory. We think this is <u>clearly mandatory,</u>
and must be complied with by the Legislature in all legislation,
important or unimportant, enacted by it otherwise it will be
invalid. <u>State v. Burrow,</u> 104 S.W.2d 526, 529, 119 Tenn. 376
(1907); <u>Bigg v. Beeler,</u> 173 S.W.2d 144, 146, (Tenn. 1943).

### III. What is the Purpose of the constitutional Provision for an Enacting Clause?

To determine the validity of using laws without an enacting clause against

citizens, we need to determine the purpose and function of an enacting clause; and also to

see what problems or evils were intended to be avoided by including such a provision in

our State Constitution. One object of the constitutional mandate for an enacting clause is

to show that the law is one enacted by the legislative body, which has been given the

lawmaking authority under the Constitution.

The purpose of thus prescribing an enacting clause – "the
style of the acts" – is to establish it; to give it permanence,
uniformity, and certainty; <u>to identify the act of legislation as</u>
<u>of the general assembly;</u> to <u>afford evidence of its legislative</u>
<u>statutory nature;</u> and to secure uniformity of identification,
and thus prevent inadvertence, possibly mistake and fraud.
<u>State v. Paterson,</u> 4 S.E. 350, 352, 98 N.C. 660 (1887); 82 J.C.S.
"Statutes" Sec. 65, p. 104; <u>Joiner v. State,</u> 155 S.E.2d 8, 10, 223
Ga. 367 (1967).

What is the object of the style of a bill or enacting clause
anyway? To <u>show the authority</u> by which the bill is enacted into
law; to show that the act comes from a place pointed out by the
Constitution as the <u>source of legislation.</u> <u>Ferrill v. Keel,</u>
151 S.W. 269, 272, 105 Ark. 380 (1912).

To fulfill the purpose of identifying the law making authority of the law, it has

been repeatedly declared by the courts of this land that an enacting clause is to appear **on**

**the face of every law,** which the people are expected to follow and obey.

The almost unbroken custom of centuries has been to preface laws

6

with a statement in some form <u>declaring the enacting authority.</u>
The purpose of an enacting clause of a statute is to <u>identify</u> it
as an act of legislation by expressing <u>on its face the authority</u>
<u>behind the act.</u> 73 Am. Jur.2d, "Statutes", Sec 93, p. 319, 320;
<u>Preckel v. Byrne</u>, 243 N.W. 823, 826, 62 N.D. 356 (1932).

For an enacting clause to appear on the face of the law, it must be recorded or

published with the law so the public can readily identify the authority for that particular

law, which they are expected to follow. The "codes" used in the complaints against the

Accused have no enacting clauses. They thus cannot be identified as acts of legislation of

the State of Arkansas pursuant to its lawmaking authority under Article V of the

Constitution of Arkansas (1874), since a law is mainly identified as a true and

Constitutional law by way of its enacting clause. The Supreme Court of Georgia asserted

that the statute must have an enacting clause, even though their State Constitution had no

provision for the measure. The Court stated that an enacting clause establishes a law as

being a true and authentic law of the State:

> The enacting clause is that portion of a statute, which gives it
> jurisdictional identity and constitutional authenticity. <u>Joiner</u>
> <u>v. State,</u> 155 S.E.2d 8, 10 (Ga. 1967).

The failure of a law to display on its face an enacting clause deprives it of

essential legality, and renders a statute which omits such clauses as "a nullity and of no

force of law." <u>Joiner v. State,</u> supra. The statutes cited in the complaints have no

jurisdictional identity and are not authentic law under the Constitution of Arkansas.

The Court of Appeals of Kentucky held that the constitutional provision requiring an

enacting clause is a basic concept, which has a direct affect upon the validity of the law.

The Court, in dealing with a law that had contained no enacting clause, stated:

> The alleged act or law in question is <u>unnamed</u>; it shows <u>no sign</u>

> of authority; it carries with it no evidence that the General
> Assembly or any other lawmaking power is responsible or answerable
> for it. * * * By an enacting clause, the makers of the Constitution
> intended that the General Assembly should make its impress
> seal, as it were, upon each enactment for the sake of identity,
> and to assume and show responsibility. * * * While the Constitution
> makes this a necessity, it did not originate it. The custom is
> in use practically everywhere, and is as old as parliamentary
> government, as old as king's decrees, and even they borrowed it.
> The decrees of Cyrus, King of Persia, which Holy Writ records,
> were not the first prefaced with a statement of authority. The
> law was delivered to Moses in the name of the **Great I Am,** and
> the prologue to the Great Commandments is no less majestic and
> impelling. But, whether these edicts and commands be promulgated
> by the Supreme Ruler or by petty kings, or by the sovereign
> people themselves, they have always begun with some such form
> as evidence of power and authority. Commonwealth v. Illinois
> Cont., R. Co., 170 S.W. 171, 172, 175, 160 Ky. 745 (1914).

The "laws" used against the Accused are unnamed. They show no sign of

authority on their face as recorded in the "A.C.A.". They carry with them no evidence

that the Legislature of Arkansas, pursuant to Article V of the Constitution of Arkansas

(1874), is responsible for these laws. With an enacting clause the laws referenced to in

the complaints have no official evidence that they are from an authority, which I am

subject to or required to obey.

When the question of the "objects intended to be secured by the enacting clause

provision" was before the Supreme Court of Minnesota, the Court held that such a clause

was necessary to show the people who are to obey the law, the authority for their

obedience. It was revealed that historically this was a main use for an enacting clause,

and thus its use is a fundamental concept of law. The Court stated:

> All written law, in all times and in all countries, whether in the
> form of decrees issued by absolute monarchs, or statutes enacted
> by king and council, or by a representative body, have, as a rule,
> expressed upon their face the authority by which they were
> promulgated or enacted. The almost unbroken custom of centuries

has been to preface laws with a statement in some form declaring the <u>enacting authority</u>. If such an enacting clause is a mere matter of form, a relic of antiquity, serving no useful purpose, why should the constitutions of so many of our states require that <u>all laws</u> must have an enacting clause, and prescribe its form. If an enacting clause is useful and important, if it is desirable that laws <u>shall bear upon their face the authority by which they are enacted, so that the people who are to obey them need not search legislative and other records to ascertain the authority,</u> then it is not beneath the dignity of the framers of a constitution, or unworthy of such an instrument, to prescribe a uniform style for such enacting clause.

The words of the constitution, that the style of all laws of this state shall be, "*Be it enacted by the legislature of the state of Minnesota,*" imply that <u>all laws</u> must be so expressed or declared, to the end that they may <u>express upon their face the authority by which they were enacted;</u> and, if they do not so declare, <u>they are not laws of this state.</u>  Sjoberg v. Security Savings & Loan Assn, 73 Minn. 203, 212-214 (1898).

This case was initiated when it was discovered that the law relating to "building, loan and savings associations," had no enacting clause as it was printed in the statute book, "Laws 1897, c. 250." The Court made it clear that a law existing in that manner is "void" <u>Sjoberg</u> supra, p. 214.

The purported laws in the complaints, which the Accused is said to have violated, are referenced to various laws found printed in the "A.C.A." book. I have looked up the laws charged against me in this book and found no enacting clause for any of these laws. A citizen is not expected or required to search through other records of books for the enacting authority. If such enacting authority is not "on the face" of the laws, which are referenced in a complaint, then "<u>they are not laws of this state;</u>" and thus are not laws to which I am subject. Since they are not laws of this state, the above-named Court has no subject matter jurisdiction, as there can be no crime, which can exist from failing to follow laws, which do not constitutionally exist.

9

In speaking on the necessity and purpose that each law be prefaced with an

enacting clause, the Supreme Court of Tennessee quoted the first portion of the Sjoberg

case cited above, and then stated:

> The purpose of provisions of this chapter is that <u>all statutes</u>
> may <u>bear upon their faces a declaration of sovereign authority</u>
> by which they are enacted and declared to be the law, and to
> promote and preserve uniformity in legislation.  Such clauses
> also import a command of obedience and clothe the statute with a
> certain dignity, believed in all times to command respect and
> aid in the enforcement of laws.  <u>State v. Burrow</u>, 104 S.W. 526,
> 529, 119 Tenn. 376 (1907).

The use of an enacting clause does not merely serve as a "flag" under which bills

run the course through the legislature machinery.  <u>Vaughn & Ragsdale Co. v. State Bd. of</u>

<u>Eq.</u>, 96 P.2d 420, 424 (Mont. 1939).  The enacting clause of a law goes to its substance,

and is not merely procedural.  <u>Morgan v. Murray,</u> 328 P.2d 644, 654 (Mont. 1958).

Any purported statute, which has no enacting clause <u>on its face,</u> is not legally

binding and obligatory upon the people, as it is not constitutionally a law at all.  The

Supreme Court of Michigan, in citing numerous authorities, said that an enacting clause

was a requisite to a valid law since the enacting provision was mandatory:

> It is necessary that <u>every law</u> should show <u>on its face the</u>
> <u>authority</u> by which it is adopted and promulgated, and that it
> should clearly appear that it is intended by the legislative
> power that enacts it that it should take effect as a law.
> <u>People v. Dettenthaler,</u> 77 N.W. 450, 451, 118 Mich. 595 (1898):
> citing <u>Swann v. Buck,</u> 40 Miss. 270.

The laws in the "A.C.A." do not show on their face the authority by which they

are adopted and promulgated.  There is nothing on their face, which declares they should

be law, or that they are of the proper legislative authority in this State.

These and other authorities then all hold that the enacting clause of the law is to be "on its face." It must appear directly above the content or body of the law. To be on the face of the law does not and cannot mean that the enacting clause can be buried away in some other volume, or book, or records.

> **Face.** The surface of anything, especially the front, upper, or outer part or surface. That which particularly offers itself to the view of a spectator. That which is shown by the language employed, without any explanation, modification, or addiction from extrinsic facts of evidence. <u>Black's Law Dictionary</u>, 5th ed., p. 530.

The enacting clause must be intrinsic to the law, and not "extrinsic" to it, that is, it cannot be hidden away in other records or books. Thus the enacting clause is regarded as part of the law, and has to appear directly with the law, on its face, so that one charged with said law knows the authority by which it exists.

### IV. **Laws Must be Published and Recorded with Enacting Clauses.**

Since it has been repeatedly held that an enacting clause must appear "on the face" of a law, such a requirement affects the printing and publishing of laws. The fact that the constitution requires "all laws" to have an enacting clause makes it a requirement on not just bills within the legislature, but on published laws as well. If the constitution said "all bills" **shall** have an enacting clause, it probably could be said that their use in publications would not be required. But the historical usage and application of an enacting clause has been for them to be printed and published along with the body of the law, thus appearing "on the face" of the law.

It is obvious, then, that the enacting clause must be readily visible on the face of a statute in the common mode in which it is published so that citizens don't have to search through the legislative journals or other records and books to see the kind of clause used,

11

or if any exist at all. Thus a law in a statute book without an enacting clause is not a valid publication of law. In regards to the validity of a law that was found in their statute books with a defective enacting clause, the Supreme Court of Nevada held:

> Our constitution expressly provided that the enacting clause of every law shall be, "*The people of the state of Nevada, represented in senate and assembly, do enact as follows.*" This language is susceptible of but one interpretation. There is no doubtful meaning as to the intention. It is, in our judgment, an imperative mandate of the people, in their sovereign capacity, to the legislature, requiring that all laws, to be binding upon them, shall upon their face, express the authority by which they are enacted; and since this act comes to us without such authority appearing upon its face, it is not a law." State of Nevada v. Rogers, 10 Nev. 120, 261 (1875); approved in Caine v. Robbins, 131 P.2d 516, 518, 51 Nev. 416 (1942); Kefauver v. Spurling, 290 S.W. 14, 15 (Tenn. 1926).

The manner in which the law came to the court was by the way it was found in the statute book, cited by the Court as "A.C.A. 5-19-602" and that is how they judge the validity of the law. Since they saw that the act, as it was printed in the code book, had an insufficient enacting clause on its face, it was deemed to be "not a law." It is only by inspecting the publicly printed code book that the people can determine the source, authority and constitutional authenticity of the law they are expected to follow. It should be noted that laws in the above cases were held to be void for having no enacting clause. Nothing can exist as a State law except in the manner prescribed by the State Constitution. One of those provisions is that "all laws" must bear on their face a specific enacting style – "*Be it enacted by the General Assembly of the State of Arkansas*" (Ark. Const. Art. V, Sec. 19). All laws must be published with this cause in order to be valid laws, and since the "codes" in the "A.C.A." are not so published, they are not valid laws of this State.

**V. The Laws Referenced to in the Complaints Contain no Titles.**

The laws listed in the complaints in question, as cited from the "A.C.A.", contains

no titles. All laws are to have titles indicating the subject matter of the law. The law

makers of early Arkansas knew that the need for a title and subject were necessary in

order to indicate the subject matter of the law, even though the constitution of Arkansas

did not mandate its use. However, the exhibits attached herein, indicate the use of titles

from the beginning of Arkansas law to the present. [In examining the law we see that the

lawyers converted from a Republican form of government to a corporate, all capital

usage, thereby committing treason, however, this is a topic all of its own.] Thereby the

title as a directed limit to the act "is as a part of the act as the body itself." Leininquer v.

Alger, 26 N.W.2d 348, 351, 316 Mich. 644 (1947).

> The title to a legislative act is a part thereof, and must
> clearly express the subject of legislation. State v. Burlington
> & M. R.R Co., 60 Neb. 741, 84 N.W. 254 (1900).

Nearly all authorities have held that the title is part of the act.37 A.L.R.

Annotated, pp. 948, 949. What then can be said of a law in which an essential part of it is

missing, except that is not a law?

This provision of the State Constitution, providing that every law is to have a title

expressing one subject, is mandatory and is to be followed in all laws, as stated by the

Supreme Court of Tennessee.

> The constitutional provision that "no bill shall become a law
> which embraces more than one subject" is mandatory and imperative,
> and not merely directory. It is a plain, direct, positive,
> imperative, absolute and unconstitutional limitation upon
> legislative power. Cannon v. Mathes, 55 Tenn. 504 (1872); Kirk
> v. State, 126 Tenn. 7, 150 S.W. 83 (1911).

13

The constitutional provisions for a title have been held in many other states to be mandatory in the highest sense. State v. Beckman, 185 S.W.2d 810, 816 (Mo. 1945); Leininger v. Alger, 26 N.W.2d 384, 316 Mich. 644; C.J.S. "Statutes," Sec. 64, p. 102. The provision for a title in the constitution "renders a title indispensable" 73 Am. Jur. 2d, "Statutes," Sec. 99, p. 325, citing People v. Monroe, 349 Ill. 270, 182 N.E. 439. Since such provisions regarding a title are mandatory and indispensable, the existence of a title is necessary to the validity of the act.

Without the title the intent of the legislature is concealed or cloaked from public view. Yet a specific purpose or function of a title to a law is to "protect the people against covert legislation" Brown v. Clower, 166 S.E. 2d 363, 365, 225 Ga. 165 (1969). A title will reveal or give notice to the public of the general character of the legislation. However, the nature and intent of the "laws" in the "A.C.A." have been concealed and made uncertain by its nonuse of titles. Thus another purpose of the title is to apprise the people of the nature of legislation, thereby preventing fraud or deception in regard to the laws they are to follow. The U.S. Supreme Court, in determining the purpose of such a provision in state constitutions, said:

> The purpose of the constitutional provision is to prevent the
> inclusion of incongruous and unrelated matters in the same measure
> and to guard against inadvertence, stealth and fraud in
> legislation. * * * Courts strictly enforce such provisions in
> cases that fall within the reasons on which they rest, * * * and
> hold that, in order to warrant the setting aside of enactments
> for failure to comply with the rule, the violation must be
> substantial and plain. Posados v. Warner, B. & Co., 279 U.S.
> 340, 344 (1928); also Internat. Shoe Co. v. Shartel, 279 U.S.
> 429, 434 (1928).

14

The complete omission of a title is about as substantial and plain a violation of

this constitutional provision as can exist. The laws cited in and complaints against the

Accused are of that nature. They have no titles at all, and thus are not laws.

The Supreme Court of Idaho, in construing the purpose for its constitutional

provision requiring a one-subject title on all laws, stated:

> The object of the title is to give a general statement of the
> subject-matter, and such a general statement will be sufficient
> to include all provisions of the act having a reasonable connection
> with the subject-matter mentioned. * * * The object or purpose
> of the clause in the constitution * * * is to prevent the
> perpetration of fraud upon the members of the legislatures or
> the citizens of the state in the enactment of laws. Ex parte
> Crane, 151 Pac. 1006, 1010, 27 Idaho 671 (1915).

The Supreme Court of North Dakota, in speaking on its constitutional

provision requiring titles on laws, stated that, "This provision is intended * * *

to prevent all surprises or misapprehensions on the part of the public." State v. McEnroe,

283 N.W. 57, 61 (1938). The Supreme Court of Minnesota, in speaking on Article 4 Sec.

27 of the State Constitution, said:

> This section of the constitution is designed to prevent deception
> as to the nature or subject of legislative enactments. State v. Rigg,
> 109 N.W.2d 310, 314, 260 Minn. 141 (1961); LeRoy v. Special
> Ind. Sch. Dist., 172 N.W.2d 764, 768 (Minn. 1969).

> [T]he purpose of the constitutional provision quoted is * * *
> to prevent misleading or deceiving the public as to the nature
> of an act by the title given it. State v. Helmer, 211 N.W. 3,
> 169 Minn. 221 (1926).

The purposes of the constitutional provision requiring a one-subject title, and the

mischiefs which it was designed to prevent, are defeated by the lack of such a title on the

face of a law, which a citizen is charged with violating. Upon looking at the laws

charged in the complaint from the "A.C.A.," I am left asking, what is the subject and

15

nature of the law used in the complaints against me? What interest or rights are these laws intended to affect? Since the particular objects of the provision requiring a one-subject title are defeated by the publication of laws, which are completely absent of a title, the use of such a publication to indict or charge citizens with violating such laws is fraudulent and obnoxious to the Constitution.

> It is to prevent surreptitious, inconsiderate, misapprehended legislation, carelessly, inadvertently, or unintentionally enacted through stealth and fraud, and similar abuses, that the subject or object of a law is required to be stated in the title. 73 Am. Jur. 2d, "Statutes," Sec. 100, p. 325 cases cited.

Judge Cooley says that the object of requiring a title is to "fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered." Cooley, Const. Lim., p. 144. The State Constitution requires one-subject titles. The particular ends to be accomplished by requiring the title of a law are not fulfilled in the statutes referred to in the "A.C.A.". Thus the laws charged in the complaints against me are not valid laws.

**VI. Arkansas Codes are of an Unknown and Uncertain Authority.**

The so-called "codes" in the A.C.A. are not only absent enacting clauses, but are surrounded by other issues and facts which make their authority unknowns or uncertain or questionable.

The title page of the "A.C.A." states that the statutes therein were, "complied, edited, and published by the Arkansas Code Commission." It does not say that they are the official laws of the Legislature of Arkansas. The official laws of this state have always been listed in the Act of Arkansas. The title page to the Session Laws makes it

16

clear as to the nature of the laws therein, to wit – "Act of the State of Arkansas passed during the forty-fourth session of the State Legislature."

The "Acts" were also published by the Secretary of the State, who historically and constitutionally is in possession of the enrolled bills of the Legislature, which become State law.

The "A.C.A." is published by the Code Commission, and is also copyrighted by him or his office. The "Acts" were never copyrighted, as they are true public documents. In fact no true public document of this state or any other state or of the United States has been or can be under a copyright. Public documents are in the public domain. A copyright infers a private right over the contents of a book, suggesting that the laws in the "A.C.A." are derived from a private source, and thus are not true public laws.

The Commission does not say that the statutes in his book are the official laws of the State of Arkansas. It indicates that these statutes are only in "theory" laws of the State. There thus are many confusing and ambiguous statements made by the Commission as to the nature and authority of the "A.C.A."   That which is uncertain cannot be accepted as true or valid law.

Uncertain things are held for nothing.  Maxim of Law.

The law requires, not conjecture, but certainty.  Coffin v. Ogden, 85 U.S. 120, 124.

Where the law is uncertain, there is no law.  Bouvier's Law Dictionary, Vol. 2, "Maxims," 1880 edition.

The purported statutes in the "A.C.A." do not make it clear by what authority they exist. The statutes therein have no enacting authority on their face. In face there is not a hint that the Legislature of Arkansas had anything at all to do with these so-called statutes

books. Thus the statutes used against the Accused are just idle words, which carry no
authority of any kind on their face.

### VII.    Established Rules of Constitution Construction.

The issue of subject matter jurisdiction for this case thus squarely rests upon

certain provisions of the Constitution of Arkansas (1874), to wit:

> Article V, Sec. 19.  The style of the laws of this state shall
> be.  *"Be it enacted by the General Assembly of the State of
> Arkansas."*

This provision is not in the least ambiguous or susceptible to any other

interpretation than their plain and apparent meaning.  The Supreme Court of Montana, in

constructing such provisions, said that they were "so plainly and clearly expressed and

are so entirely free from ambiguity," that "there is nothing for the court to construe"

<u>Vaughn & Ragsdale Co. v. State Bd. of Eq.,</u> 96 P.2d 420, 423, 424.  The Supreme Court

of Minnesota stated how these provisions are to be construed, when it was considering

the meaning of another provision under the legislative department (Art. 4 Sec. 9):

> In treating of constitutional provisions, we believe it is the
> general rule among courts to regard them as mandatory, and not to
> leave it to the will or pleasure of a legislature to obey or
> disregard them.  Where the language of the constitution is <u>plain,</u>
> we are not permitted to indulge in speculation concerning its
> meaning, nor whether it is the embodiment of great wisdom.
> * * * The rule with reference to constitutional construction
> is also well stated by Johnson, J., in this case of <u>Newell v.
> People,</u> 7 N.Y. 9, 97, as follows: "If the words embody a
> <u>Definite meaning,</u> which involves no absurdity, and no
> contradiction between different parts of the same writing, then
> <u>that meaning apparent upon the face of the instrument</u> is the one
> which alone we are at liberty to say was intended to be conveyed.
> In such a case <u>there is no room for construction.</u>  That which
> the words declare is the meaning of the instrument; and <u>neither
> court nor legislatures have the right to add to or take away from
> that meaning.</u>  * * * It must be very plain, -- nay, absolutely
> certain – that the people did not intend what the language they

have employed in its <u>natural signification imports,</u> before a
court will feel itself at liberty to depart from the <u>plain</u>
<u>reading</u> of a constitutional provision," <u>State ex rel. v. Sutton,</u>
63 Minn. 147, 149, 150, 65 N.W. 262 (1895); affirmed, <u>State v.</u>
<u>Holm,</u> 62 N.W.2d 52, 55, 56, (Minn. 1954);  <u>Butler Taconite v.</u>
<u>Roemer,</u> 282 N.W.2d 867, 870, 871 (Minn. 1979).

It is certain that the plain and apparent language of these Constitutional provisions

are not followed in the publication known as the "A.C.A." which contain no titles and no

enacting clauses, and thus it is not and cannot be used as the law of the State under our

Constitution. There is no room for construction!  The contents of these provisions were

written in ordinary language, making their meaning self-evident, as said by the Supreme

Court of Tennessee.

The provision we are here called upon to construe is in plain
and unambiguous words.  The meaning of it is clear and
indisputable, and no ground for construction can be found.  The
language is: "The style of the laws of this state shall be,"
etc.  The word "shall" as used here, is equivalent to "must."
We know of no case in which a provision of the Constitution thus
expressed has been held to be directory.  We think this one
<u>clearly</u> mandatory, and must be complied with by the Legislature
in all legislation, important or unimportant, enacted by it;
otherwise it will be <u>invalid.</u>  <u>State v. Burrow,</u> 104 S.W. 626,
529  119 Tenn.  376 (1907).

No matter how much the courts of this State have relied upon and used the

publication entitled "A.C.A." as being law, that use can never be regarded as an

exception to the Constitution.  To support this publication as law, it must be said that it is

"absolutely certain" that the framers of the Constitution did not intend for titles and

enacting clauses to be printed and published with laws, and that they did intend for them

to be all stripped away and concealed from public view when a compilation of statutes is

made.  Such an absurdity will gain the support or respect of no one.  Nor can it be

speculated that a revised statute publication which dispense with all titles and enacting

19

clauses must be allowed under the Constitution as it is more practical and convenient than the "Act" publication. The use of such speculations can never be used in construing such plain and unambiguous provisions.

> T]he general rule of law is, when a statute or Constitution is plain unambiguous, the court is not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom. A Constitution is intended to be framed in brief and precise language. * * * It is not within the province of the court to read an exception in the constitution which the framers thereof did not see fit to enact therein. Baskin v. State, 232 Pac. 38, 389, 107 Okla. 272 (1925).

There is of course no need for construction or interpretation of these provisions as they have been adjudicated upon, especially those dealing with the use of an enacting clause. Being that the "codes" used against me are without enacting clauses and titles they are void, which means there is no offense, no valid complaints, and thus no subject matter jurisdiction.

The provisions requiring an enacting clause and one-subject titles were adhered to with the publications known as the "Acts" and "General Laws" for the State of Arkansas. But because certain people in government thought that they could devise a more convenient way of doing things without regard for provisions of the State Constitution, they devised the contrivance known as the "A.C.A.," and then held it out to the public as being "law." This, of course, was fraud, subversion, and a great deception upon the people of this State, which is now revealed and exposed.

There is no justification for deviating from or violating a written constitution. The "A.C.A." cannot be used as law, like the "Acts" were once used, solely because the circumstances have changed and we now have more laws to deal with. It cannot be said that the use and need of revised statutes without titles and enacting clauses must be

20

justified due to expediency. New circumstances or needs do not change the meaning of

the constitutions, as Judge Cooley expressed:

> A constitution is not to be made to mean one thing at one time,
> and another at some subsequent time when the circumstances may
> have so changed as perhaps to make a different rule in the case
> seem desirable. A principal share of the benefit expected from
> written constitutions would be lost if the rules they established
> were so flexible as to bend to circumstances or be modified by
> public opinion. * * * [T]he court or legislature, which should
> allow a change in public sentiment to influence it in giving to
> a written constitution a construction not warranted by the
> intention of its founders, would be justly chargeable with
> reckless disregard of official oath and public duty; and if its
> course could become a precedent, these instruments would be of
> little avail. * * * What a court is to do, therefore, is <u>to
> declare the law as written.</u> T. M. Cooley, <u>A Treatise on the
> Constitutional Limitations,</u>  5th edition, pp. 54, 55.

There is a great danger in looking beyond the constitution itself to ascertain its

meaning and the rule for government: Looking at the Constitution alone, it is not at all

possible to find support for the idea that the publication called the "A.C.A." is valid law

of this State. The original intent of Article V, Sec. 19 of the Constitution cannot be

stretched to cover their use as such. These provisions cannot now be regarded as

antiquated, unnecessary or of little importance, since "no section of a constitution should

be considered superfluous." <u>Butler Taconite v. Roemer,</u> 282 N.W.2d 867, 870, (Minn.

1979). The Constitution was written for all times and circumstances, because it embodies

fundamental principles which do not change with time.

Judges are not to consider the political or economic impact that might ensue from

upholding the Constitution as written. They are to uphold it no matter what may result,

as that ancient maxim of law states: <u>"Though the heavens may fall, let justice be done."</u>

## MOTION

Based upon the above memorandum, the Accused moves that this action and cause be dismissed for lack of subject matter jurisdiction.

> A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. United States v. Siviglia, 686 Fed.2d 832, 835 (1981) cases cited.

Nothing can be regarded as a law in this State which fails to conform to the constitutional prerequisites, which calls for an enacting clause and title. There is nothing in the complaints, which can constitutionally be regarded as laws, and thus there is nothing in them, which I am answerable for or which can be charged against me. Since there are no valid or constitutional laws charged against me, there are no crimes that exist, consequently there is no subject matter jurisdiction by which I can be tried in the above-named court. All law! **All Law** is by definition only. The defining power was given to the legislature not self-serving lawyers committing treason.

## CAVEAT

I regard it as just and necessary to give fair warning to this court of the consequences of its failure to follow the Constitution of Arkansas and the United States and uphold its oath and duty in this matter, being that it can result in this court committing acts of treason, usurpation, and tyranny. Such trespasses would be clearly evident to the public, especially in light of the clear and unambiguous provisions of the Constitution that are involved here which leave no room for construction, in light of the numerous adjudications upon them as herein stated. The possible breaches of law that may result by denying this motion are enumerated as follows:

22

1. The failure to uphold these clear and plain provisions of our Constitution cannot be regarded as mere error in judgment, but deliberate **USURPATION**. "Usurpation is defined as unauthorized arbitrary assumption and exercise of power." State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N.W.2d 855, 863, (1951). While error is only voidable, such usurpation is void.

> The boundary between an error in judgment and the usurpation of judicial power is this: The former is reversible by an appellate court and is, therefore, only voidable, which the latter is a nullity. State v. Mandehr, 209 N.W. 750, 752, (Minn. 1926).

To take jurisdiction where it clearly does not exist is usurpation, and no one is bound to follow acts of usurpation, and in fact it is a duty of citizens to disregard and disobey them since they are void and unenforceable.

> [N]o authority need to be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable. Hooker v. Boles, 346 Fed.2d 285, 286 (1965).

The fact that the "Arkansas Code Annotated" has been in use for over forty years cannot be held as a justification to continue to usurp power and set aside the Constitutional provisions which are contrary to such usurpation, as Judge Cooley stated:

> Acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution. Cooley, Constitutional Limitations, p. 71.

2. To assume jurisdiction in this case would result in TREASON. Chief Justice John Marshall once stated:

> We [judges] have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Cohens v. Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821).

The judges in these courts took an oath to uphold and support the Constitution of Arkansas, and their blatant disregard of that obligation and allegiance can only result in an act of treason.

3. If this court departs from the clear meaning of the Constitution, it will be regarded as a blatant act of TRYANNY. Any exercise of power, which is done without the support of law or beyond what the law allows is tyranny.

> It has been said, with much truth, "Where the law ends, tyranny begins." Merritt v. Welsh, 104 U.S. 694, 702 (1881).

The law, the Constitution, does not allow laws to exist without title or enacting clauses. To go beyond that and allow the "Arkansas Code Annotated" to exist as, "law" is nothing but tyranny. Tyranny and despotism exist where the will and pleasure of those in government is followed rather than established law. It has been repeatedly said and affirmed as a most basic principle of our government that, "this is a government of laws and not of men; and that there is no arbitrary power located in any individual or body of individuals." Cotting v. Kansas City Stock Yards Co., 183 U.S. 79, 84 (1901). The Constitution requires that all laws have enacting clauses. If this clear and unambiguous provision of the State Constitution can be disregarded, then we no longer have a constitution in this state, and we no longer live under a government of laws but a government of men, i.e., a system that is governed by the arbitrary will of those in office. The creation of the "Arkansas Code Annotated" is a typical example of the arbitrary acts of government, which have become all too prevalent in this century. Its use as law is a nullity under our Constitution.

I am not an expert in the law; however, I know right from wrong.  If there is any human being damaged by any statement herein, if he will inform me by facts I will sincerely make every effort to amend my ways.  I hereby and herein reserve the right to amend and make amendments to this document as necessary in order that the truth may be ascertained and proceedings justly determined.  If the parties given notice by means of this document have information that would controvert and overcome this affidavit, please advise me in written affidavit form within the allotted time (21 days) from receipt hereof providing me with your counter affidavit by all requisite actual evidentiary fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that this affidavit statement is substantially and materially false sufficiently to change materially my status and factual declarations.  Your silence stands as consent to, and tacit approval of, the factual declarations herein being established as fact as a matter of law.  May the will of our Heavenly Father through the power and authority of the blood of his Son be done on earth as it is in Heaven.

January 3, 2007

Robert Szlemko
212 N. Maple
Harrison, Arkansas 72601